OPINION OF THE COURT
Fuchsberg, J.
The issue is whether a disclaimer of liability, based on specified exclusions in two professional “errors and omissions” indemnity insurance policies, waived the insurers’ defense that the claim was outside the scope of the insuring clause of the policy.
The plaintiff, Albert J. Schiff Associates, Inc., life insurance agents and employee benefit consultants, purchased two such insurance contracts from the defendants, who are Lloyd’s insurers.[1] The “insuring agreement” clause of each policy provides that the insurer will pay “all sums which the Assured shall become legally obligated to pay by reason of liability for any error, omission or negligent act committed, or alleged to have been committed by the Assured * * * while in the performance of services in the professional capacity of the Assured as: (a) Actuaries, (b) Employee Benefit Plan Consultants, and (c) Life Insurance Agents or Brokers.” Under the rubric “exclusions”, for which the policy states it would not indemnify the assured, are listed policyholder conduct (1) “ [which is] Brought about by or contributed to by the dishonest [or] fraudulent * * * Act”, (2) “[which] involves any inability or failure to pay * * * *696 [a] premium claim or tax”, or (3) “[from which] the Assured gained in fact any personal profit or advantage to which the Assured was not legally entitled”.
It was a letter of disclaimer based on these three exclusions that precipitated the dispute between the insured and its insurers. The disclaimer disavowed any obligation to defend or indemnify against a suit brought against the insured in a Massachusetts court. The complaint in that action, brought by a competitor of the insured, one Backman, charged the insured with what is reasonably to be construed, as it was by the majority at the Appellate Division, as a “willful and malicious usurpation of a trade or commercial secret”. Specifically, it alleged that Backman, the developer of a novel insurance program (the Double Dollar Plan), revealed it to Albert J. Schiff, concededly agent plenipotentiary for the corporation which bears his name. It goes on to describe how Schiff, despite the injunction of a written agreement which proscribed his disclosing the plan to others, except under conditions not relevant here, once privy to this information, converted it lock, stock and barrel for the benefit of his corporation, albeit under another name (the Executive Salary Protection Plan). So insistent was the pléader in his assertion that Schiff’s conduct was “willful” that only once in a 10-count complaint did any form of the qualitatively lesser word “neglected” appear, and then only to be preceded by the adjective “willfully”.
These facts are before us in the following procedural context. After the insured received the insurers’ disclaimer of liability, it commenced this action. Juxtaposing the Massachusetts complaint and the language of the insurance contracts (see Shapiro v Glens Falls Ins. Co., 39 NY2d 204), defendants moved under CPLR 3211 (subd a, pars 1, 7) to dismiss the complaint in our case, primarily on the ground that the policy language brought the claim they were being asked to defend squarely within the exclusions recited in their letter of .disclaimer. Focusing on the exclusions, but ñnding that they and the Backman complaint did not dovetail, Special Term denied the motion and, on the authority of Goldberg v Lumber Mut. Cas. Ins. Co. (297 NY 148) and other cases that hold that the duty to defend is broader then *697 the duty to pay, granted plaintiff’s cross motion only to the extent that it ordered defendants to undertake the defense of the suit in Massachusetts.
On appeal to the Appellate Division, that court sharply divided, Justice Sullivan, writing for a majority of three, declined to reach the merits of the disclaimer, but, of the view that the Massachusetts claim did “not in any way suggest a negligent act, error or omission in the performance of any professional services”, held that the claim therefore was not within the policy coverage. Concordantly, the court reversed on the law. Of the two dissenters, Justice Kupferman, characterizing the Massachusetts claim as one based on “idea piracy” would have made no determination with respect to indemnity, but would have affirmed Special Term in providing a defense. For his part, Justice Birns, who also would have affirmed, expressed the opinion that, since the disclaimer relied solely on particular exclusions, it constituted “a waiver” of any unspecified grounds, including the insuring clause itself; since he thought the applicability of the named exclusions unclear, he too would have had the disposition of that issue await the resolution of the underlying Massachusetts action. For the reasons which follow, we believe the result reached by the Appellate Division should be upheld.
We start our analysis by noting that the coverage under the policies in this case is not merely what is found under the heading “insuring agreement”. Just as this clause affirmatively indicates the coverage which is included, so does the “exclusion” clause tell us expressly what is not. In policies so drawn, the protection the insured has purchased is the sum total, or net balance, however one labels it, of a coming together of the two. For it is not either alone, but the combination of both, which defines the scope of the protection afforded — no more and no less.
Now, failure to appreciate the relationship between the two clauses — that they are each part of a whole — has often led not only to misdescription of what is coverage and what is not, but also to consequent contextual misapplication of the concepts of waiver and estoppel as well (e.g., S & E Motor Hire Corp v New York Ind. Co., 255 NY 69; Beckley *698 v Otsego County Farmers Coop. Fire Ins. Co., 3 AD 2d 190; Shichman v Commercial Travelers Mut. Acc. Assn., 267 App Div 389; see, generally, 16A Appleman, Insurance Law and Practice, § 9081).
Thus, for the insured to extend its coverage to more than it originally bargained, it would have had to enter into a supplemental contract expanding the insuring clause or contracting the exceptions. However, this extension of coverage cannot be attained by waiver, which is a voluntary and intentional relinquishment of a known right (Davison v Klaess, 280 NY 252, 261; Draper v Oswego County Fire Relief Assn., 190 NY 12, 16). Waiver evolved because of courts’ disfavor of forfeitures of the insured’s coverage which would otherwise result where an insured breached a policy condition, as, for instance, failure to give timely notice of a loss or failure to co-operate with the insured (16A Appleman, Insurance Law and Practice, § 9082). To defeat the forfeiture, courts find waiver where there is direct or circumstantial proof that the insurer intended to abandon the defense (Kiernan v Dutchess County Mut. Ins. Co., 150 NY 190, 195; see 16A Appleman, Insurance Law and Practice, § 9081). Further, though an insurer’s waiver of forfeiture be upon one ground, it is deemed to embrace unspecified grounds for forfeiture as well (see Appell v Liberty Mut. Ins. Co., 22 AD2d 906, affd without opn 17 NY2d 519 [insurer disclaimed on the sole ground of insured’s non-co-operation, thereby waiving late notice of accident]; Pensky v Aetna Life & Cas. Co., 84 Misc 2d 270 [insurer rejected claim for failure of insured to give notice in writing, thus waiving failure of injured party to give reasonable notice]; see, generally, 18 Couch, Insurance [2d ed], § 71:43). This, however, does not create coverage, for the underlying coverage must be subsisting if the forfeiture is to serve any purpose. So, where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable (see Gerka v Fidelity & Cas. Co., 251 NY 51, 56; Draper v Oswego County Fire Relief Assn., supra, at p 17; see, generally, 18 Couch, Insurance [2d ed], § 71:39; 2 NY PJI, § 4:79, p 1059-1060; Doctrine of Estoppel or Waiver *699 as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by its Terms or Expressly Excluded Therefrom, Ann., 1 ALR3d 1139, 1144).[2]
Distinguished from waiver, of course, is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so (see O’Dowd v American Sur. Co. of N. Y., 3 NY2d 347; Gerka v Fidelty & Cas. Co., 251 NY 51, 57, supra).
Turning now to the coverage provided by the policies, it is axiomatic that, while a contract of insurance is to be construed liberally in favor of the insured, where its terms are clear and unambiguous, they must be so read (Government Employees Ins. Co. v Kligler, 42 NY2d 863, 864). For our task is to find, not to alter the intention of the parties. And, to be sure, here the intention is manifest. The policies, denominated professional indemnity insurance, obligated the insurer to pay for the insured’s liability arising out of any error, omission or negligent act committed while in the performance of services in its professional capacity as actuary, employee benefit plan consultant and life insurance agent or broker. Key to this clause are the words “performance of services in the professional capacity”. On its face, the Massachusetts case falls outside this coverage.
The insured, nevertheless, argues that, because the allegedly misappropriated plan presumably furthered one or more of the three insurance activities enumerated in the policies, the lawsuit pertaining to such misappropriation falls within the ambit of coverage. Disregarding for now the qualitative character of this alleged acquisition, surely this assertion stands on no firmer ground than would, let *700 us say, a claim that the defendants’ coverage applies to a dispute arising out of a merger agreement between the assured and a former competitor, or one with the assured’s landlord over a commercial tenancy, or with an employment agent through which it secures its personnel, or even one with a computer company which services its office equipment.
The renting of an office, the engagement of employees, arrangements to expand the size of one’s activities, these may all have some connection with a covered business or profession. But, while they may set the stage for the performance of business or professional services, they are not the professional activities contemplated by this special coverage. An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business (see Grieb v Citizens Cas. Co., 33 Wis 2d 552). After all, the plaintiff’s policy here was neither a standard general liability policy nor a standard general liability policy with a contractual liability indorsement. Nor was it one comprehensive enough to protect against all business vicissitudes. To hold otherwise, on a fair reading of the policies, would be to create additional coverage beyond that which was bought and paid for.
Having decided that the underlying litigation falls outside the scope of the policies, we now need state only that the insurers did not lose their right to the defense of noncoverage by their initial disclaimer of liability based on the three policy exclusions, since that defense is never waived by a failure to assert it in a notice of disclaimer. Further, there is no question of estoppel in this case since the insurers at all times denied liability to indemnify and refused to undertake to defend. Thus, the defense of noncoverage remained intact and was properly asserted on the motion to dismiss.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed, with costs.

. The insurance policies, which were obtained through Lloyd’s brokers in England, are identical except that one is primary and the other excess. The defendants here are the underwriters and other participants in the coverage so written.

. Our court long ago made clear that it will not countenance the avoidance of the law of waiver by respecting the labeling as an exclusion of what, substantively is a condition. (Draper, at p 18.)