**Ruth STUTELBERG, individually and as representative of the estate of Warren H. Stutelberg, Plaintiff,**

v.

**FARRELL LINES INCORPORATED, Defendant.**

No. 80 Civ. 6248.

United States District Court, S. D. New York.

Jan. 12, 1982.

Zwerling & Zwerling, New York City, for plaintiff; Linda Strumpf, New York City, of counsel.

Lilly, Sullivan & Purcell, P. C., New York City, for defendant; Charles E. Schmidt, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, the widow of Warren H. Stutelberg ("Captain Stutelberg"), seeks to recover from the defendant, Farrell Lines Incorporated ("Farrell"), Captain Stutelberg's employer at the time of his death, $148,500 representing life insurance benefits payable under Farrell's Pension and Welfare Plan ("Farrell Plan" or "Plan").[1] Farrell denies that Captain Stutelberg, although its employee at the time of his death, was covered by its Plan.

Captain Stutelberg was a merchant marine officer who died on September 4, 1980 as the result of injuries sustained while employed by Farrell as a port captain. Previously he had been employed by American Export Lines ("AEL") first as a sea-going officer and later as a land-based port captain until March 1978. At that time, as the result of the sale by AEL of some of its vessels to Farrell, he became a Farrell employee. At the time of his death, and for many years before, he was a member of the Brotherhood of Marine Officers ("BMO") which had a collective bargaining agreement with AEL pursuant to which AEL made contributions to the BMO Pension, Welfare & Insurance Plan ("BMO Plan"). The employees also made contributions to the BMO Plan. Captain Stutelberg was a participant in, and entitled to the benefits of, the BMO Plan. Farrell, upon taking over the AEL vessels, adopted the collective bargaining agreement and, thereafter, as Captain Stutelberg's employer, it made the required contributions to the BMO Plan.

Following the acquisition of the AEL vessels by Farrell, a jurisdictional controversy developed between the Master, Mates & Pilots Union ("MM&P") and BMO over the continued representation by BMO of the former AEL personnel. The matter was submitted to the parent AFL–CIO which allocated jurisdiction over sea-going deck officers to the MM&P and upheld BMO's jurisdiction over engineering personnel. Since Captain Stutelberg was then engaged in shoreside duty, he was not required, as were the sea-going deck officers, to join the MM&P. Instead, pursuant to his rights under the collective bargaining agreement, he entered a "withdrawal status" whereby he retained his benefits package and seniority with the BMO but the union no longer served as his collective bargaining representative for other purposes.

Subsequently, BMO attempted to become the collective bargaining agent for Farrell's shoreside employees for all purposes and Captain Stutelberg signed a BMO union authorization card. On April 17, 1979 Thomas J. Smith, President of Farrell, sent Captain Stutelberg a letter stating that he had become aware he had signed an autho-

---

1. The Farrell benefits package included five items: (1) a basic group life insurance plan and dismemberment protection, (2) a medical insur-ance plan, (3) a retirement plan, (4) a supplemental group life insurance plan, and (5) a profit-sharing plan.

rization card and that "this may have been prompted by alleged inequities in wages and a lack of definite information as to your pension rights in the future." The letter continued that the company would not tolerate any management representative being represented by a union and that unless he revoked the authorization, he was to consider himself terminated effective April 27, 1979. Captain Stutelberg thereupon revoked his authorization. He and the ten or twelve other former AEL employees like him were, therefore, in the unique status of being covered by, and entitled to the benefits of, the BMO Plan, to which Farrell made employer-contributions, but since they were now shoreside managerial employees, they were not represented by BMO for other purposes.

Prior to this time, in March 1979, Farrell had unilaterally attempted to redefine as nonunion personnel these ten or twelve former AEL employees, who, like Captain Stutelberg, were in shoreside positions and to include them in the Plan it maintained for its other employees who were not otherwise covered by union-sponsored pension and welfare plans. By letter dated April 4, 1979, Farrell advised Captain Stutelberg and the others that they would become participants in the Farrell Plan effective July 1, 1979 and, thereupon, ceased its contributions to the BMO Plan for these individuals. BMO grieved the cessation of Farrell's contributions and the matter was submitted to arbitration. The arbitration award, made on June 25, 1979, was against Farrell and held that the "shoreside members of the Brotherhood of Marine Officers [were to] remain in their pre-award Union status and that payments to the Brotherhood of Marine Officers Pension and Welfare Funds shall continue to be paid by Farrell on their behalf." [2] Notice of the grievance and copies of the decision were sent to Captain Stutelberg and Farrell resumed its contributions to the BMO Plan, including retroactive payments covering the period during which it had withheld contributions.

Plaintiff contends that she is entitled to recover the life insurance proceeds under the Farrell Plan because the arbitration award did not foreclose his participation therein as well as in the BMO Plan; that he was enrolled in the Farrell Plan; and that he was never effectively terminated from it. Alternatively, she argues that even if it be found that in fact he was not enrolled in the Farrell Plan and further that the documents and letters referred to hereafter were sent to him in error, Farrell is precluded under the doctrine of equitable estoppel from denying that Captain Stutelberg was covered by its Plan for he was led to believe by its actions that he was included and relied upon such representations by, among other things, failing to purchase additional life insurance.

Her claim is based in the main upon what is alleged to be a series of errors by Farrell that began when Captain Stutelberg was included on a list of its employees eligible for participation in the Farrell Plan. On June 18, 1979 Farrell sent him an enrollment card for the Farrell Retirement Plan, one of the five elements of its benefits package,[3] and notified him that he was automatically covered by a supplemental group life insurance policy in the amount of two and one-half times his base annual salary. Captain Stutelberg returned the enrollment card designating his wife Ruth Stutelberg as beneficiary. Farrell sent him a second letter on January 1, 1980, also allegedly by error, advising him of new short term disability benefits that had been added to the Plan. Finally in March 1980, Farrell mailed him a computer-generated benefits statement providing a detailed outline of his benefits under the Farrell Plan, including the $148,500 in life insurance coverage which is the subject of this action.

The defendant, in resisting the claim, contends that Captain Stutelberg was not covered by its Plan and that his coverage under the BMO Plan rendered him ineligible. It asserts that the documents sent to

---

2. *Brotherhood of Marine Officers v. Farrell Lines, Inc.*, slip op. at 10 (June 25, 1979) (Gomberg, Arb.)

3. See note 1, *supra*.

him were the result of an initial clerical error that included him on a list of those eligible for the Plan and that he was never misled because he knew and acknowledged that the material had been sent to him in error and he was fully aware that he was not a participant in the Farrell Plan but only the BMO Plan. In short, the defendant asserts that the plaintiff seeks to take advantage of an error or series of errors.

Equitable estoppel prevents one from denying his own expressed or implied admission which has in good faith been adopted and acted upon by the other. Thus in order for plaintiff to prevail upon her contention that Farrell is estopped from denying that Captain Stutelberg was a member of the Farrell Plan, she must establish with respect to Farrell: (1) conduct by it that amounts to a false representation or concealment of material facts; (2) intention or expectation that such conduct would be relied upon by the other party; and (3) knowledge of the real facts. Plaintiff must also establish with respect to Captain Stutelberg: (1) lack of knowledge of the true facts; (2) reliance on the conduct of Farrell, the party to be estopped; and (3) a prejudicial change in position.[4] A central element to plaintiff's recovery, therefore, is a showing that Captain Stutelberg believed he was covered by the insurance provided by the Farrell Plan. In support of her claim of estoppel, plaintiff relies principally upon the letters and documents sent by Farrell to Captain Stutelberg, particularly the computerized statement sent to him in March 1980 setting forth his individual benefits under the Farrell Plan, including life insurance of $148,500 (in case of accidental death). She also relies upon her own testimony that her husband told her that he felt the insurance provided by the Farrell Plan was adequate and that it was not necessary to purchase additional coverage.

Farrell, on the other hand, not only relies upon the fact that the arbitration award determined that he was and remained a member of the BMO Plan and that Farrell was required to and did make contributions thereto of which Captain Stutelberg was aware; it also relies heavily on the testimony of two of its employees that Captain Stutelberg knew that the documents which stated that he was a member of the Farrell Plan had been sent to him in error. In short, that he knew the true facts, that he was not misled, that he did not rely upon the error, and that there was no prejudicial change of position.

Daniel Cappazola, General Manager-Human Resources of the defendant testified that shortly after Captain Stutelberg received the March 1980 benefits statement, Captain Stutelberg called to ask about it and that Cappazola told him it had been sent in error and that he should not have received the statement for he was covered by the BMO Plan and that the benefits did not apply to him.[5] He also testified that Captain Stutelberg was never enrolled by Farrell in its Plan and that it never paid premiums for his coverage under the group insurance policy, as was the case in the instance of those employees who were covered under that policy, and that it never received proceeds from any such policy on account of Captain Stutelberg's death.

Edward Morgan, General Manager-Industrial Relations of the defendant who was also a trustee of the BMO Plan, testified that sometime between July 28 and August 1, 1980, Captain Stutelberg, whom Morgan had known for approximately 15 years dating back to their tenure as employees of AEL, called him for assistance in withdrawing from the BMO Plan. The BMO Plan required its participants to contribute to the

---

4. *United States v. Bedford Associates*, 491 F.Supp. 851, 866 (S.D.N.Y.1980); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 187 (1980); *Baron v. Lombard*, 71 A.D.2d 823, 419 N.Y.S.2d 388, 389, aff'd, 50 N.Y.2d 896, 408 N.E.2d 920, 430 N.Y.S.2d 591 (1980) (Mem.); *see Rothschild v. Title Guarantee & Trust Co.*, 204 N.Y. 458, 462, 97 N.E. 879, 881 (1912).

5. The witness further testified that Farrell did not discover it had made the same error with respect to the other 10 or 11 shoreside employees until after a claim had been filed following Captain Stutelberg's death, whereupon it notified the others to this effect and their individual records corrected accordingly.

cost of the Plan and since the Farrell Plan was noncontributory (*i.e.*, all costs were paid by the employer), Captain Stutelberg wanted to withdraw from the BMO Plan in order to participate in the Farrell Plan. He testified that Captain Stutelberg knew he was not then covered by the Farrell Plan for he stated that he wanted to get out of the BMO Plan so he could participate in the Farrell Plan. Morgan further stated that he advised Captain Stutelberg to write Mr. Egan, administrator of the BMO Plan, requesting he be allowed to terminate his contributions to the BMO Plan so that he could become a participant in the Farrell Plan and that such request be placed upon the agenda for the August 6, 1980 BMO Pension Plan Trustees' meeting.

This conversation finds confirmation in a letter dated August 1, 1980 that Captain Stutelberg wrote to Mr. Egan, which is in accord with the instruction Morgan stated he gave to him, in order to effect his withdrawal from the BMO Plan. The letter states that he was having difficulty meeting the contributions he was required to make to maintain his coverage under the BMO Plan and described the Farrell Plan in terms that indicated he was aware that he currently was not a participant in the Farrell Plan. Captain Stutelberg wrote:

> I cannot understand why I must continue to pay dues—Pension & Welfare contributions. When under the Farrell Line Program of Benefits I can receive almost, if not the same coverage supplied me by the BMO Plans.
>
> \* \* \* \* \* \*
>
> My financial situation makes it impossible to continue making payments, thus jeopardizing my rights under the plan. . . . In order to keep my family covered I must turn to the Farrell Lines for such benefits.

The issue of his withdrawal was on the agenda of the August 6 meeting of the Trustees of the BMO Plan but decision was deferred pending investigation and the issue was never decided because of Captain Stutelberg's death.

Finally, certain objective evidence supports the defendant's position. Between March 1979 and September 1980 while Captain Stutelberg was alive, his family incurred medical expenses and submitted claims for coverage to BMO, but no such claims were ever submitted to Farrell. In addition, the record establishes that upon Captain Stutelberg's death, plaintiff filed for and received the benefits provided for under the BMO Plan, including $30,000 in life insurance proceeds and a monthly pension that continues during her life, or until she remarries, with some benefits payable upon her death or remarriage to her children.

Upon consideration of the totality of the evidence and upon an appraisal of the demeanor of the witnesses, the Court finds that Captain Stutelberg was not a participant in the Farrell Plan; that he knew and understood at all material times that he was not covered by the Farrell Plan, that he was ineligible for such coverage as long as he was a participant in the BMO Plan, and that he was only covered by the BMO Plan; that the various documents relied upon by plaintiff to establish her claim were sent to Captain Stutelberg through error; and further that he knew that those documents were sent to him in error and that there was no reliance thereon by him. The testimony of the two Farrell employees who testified as to their conversations with Captain Stutelberg is fully credible. Both impressed the Court as truthful and reliable witnesses, who were kindly disposed towards him. Moreover, Mr. Morgan did what he could to assist Captain Stutelberg in terminating his BMO coverage so that he would be eligible to join the Farrell Plan. Plaintiff has failed to sustain her claim of estoppel.

Plaintiff's contention that Farrell has waived its opportunity to exclude Captain Stutelberg from participation in its plan or that he was never effectively terminated therefrom is without merit. As already noted, the evidence establishes that Captain Stutelberg was not eligible for membership in the Farrell Plan as long as he was a participant in the BMO Plan and that he was aware of this. Indeed, Farrell's attempt to unilaterally alter his status by terminating its contributions to the BMO

Plan and to include him and the other shoreside personnel in its Plan, was frustrated by the BMO grievance and subsequent arbitration award. The doctrine of waiver is inapposite for not only is there no evidence of an intentional relinquishment of a known right [6] but here Captain Stutelberg was never enrolled as a participant in the Plan so there is no existing coverage against which a waiver could operate.[7] Finally, it is clear that Captain Stutelberg received adequate notice that he was not included in the Farrell Plan.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law and judgment be entered accordingly.

**6.** *Albert J. Schiff Assoc., Inc. v. Flack*, 51 N.Y.2d 692, 698, 417 N.E.2d 84, 435 N.Y.S.2d 972, 975 (1980); *City of New York v. New York*, 40 N.Y.2d 659, 669, 357 N.E.2d 988, 995, 389 N.Y.S.2d 332, 340 (1976).

**7.** *Albert J. Schiff Assoc., Inc. v. Flack, supra,* 51 N.Y.2d at 698, 417 N.E.2d at 87, 435 N.Y. S.2d at 975 ("[W]here the issue is the existence or non-existence of coverage ... the doctrine of waiver is simply inapplicable.")