**LONE STAR INDUSTRIES, INC. and New York Trap Rock Corporation, Plaintiffs,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. 87 CIV. 4748 (PKL).**

United States District Court, S.D. New York.

July 15, 1988.

As Amended Sept. 7, 1988.

Anderson Russell Kill & Olick, P.C., New York City (William Hart and Eugene Killian, of counsel), for plaintiffs.

Henderson & Brennan, White Plains, N.Y. (Francis J. Henderson, of counsel), for defendant.

## AMENDED MEMORANDUM DECISION & ORDER

LEISURE, District Judge:

This is a diversity action for a declaratory judgment pursuant to 28 U.S.C. § 2201. Plaintiffs, Lone Star Industries, Inc. ("Lone Star") and New York Trap Rock Corporation ("NYTR"), move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure that (a) three personal injury actions against plaintiffs do not fall within the "completed operations hazard" of the applicable insurance policy; (b) the personal injury actions are not subject to the $1,000,000 "completed operations" annual aggregate limit of liability; and (c) defendant Liberty Mutual Insurance Company ("Liberty Mutual") is estopped from abandoning defenses of plaintiffs undertaken in the three personal injury actions. For the reasons stated below, plaintiffs' motion is granted and summary judgment is entered for plaintiffs.

## FACTUAL BACKGROUND

The facts in this action are undisputed. On November 6, 1984, NYTR sold a quantity of crushed stone from its quarry in West Nyack, New York to Con Agg Recycling Corp. ("Con Agg"). The crushed stone was loaded onto a truck owned by J & T Sand and Gravel Co., Inc. ("J & T"), an independent trucking firm hired by Con Agg to pick up the crushed stone from the NYTR quarry. Two trips were required to transport the entire order. The first trip was completed without incident, but after the stone was loaded for the second trip, J & T's truck was involved in accident shortly after leaving NYTR premises.

On December 4, 1984, an action was commenced in the Supreme Court of the State of New York, County of Bronx, by Wilson LaSalle against J & T, the driver of J & T's truck, Lone Star and NYTR. The claim against NYTR and Lone Star was based upon their alleged negligence in loading J & T's truck. The complaint demanded compensatory damages in the amount of $100,000,000, and punitive damages in the amount of $200,000,000.

In or about April 1985, a second action was commenced in the Supreme Court of the State of New York, County of Bronx, by Richard L. Fincher, administrator of the estate of Naomi E. Fincher. The complaint named as defendants J & T, the driver of J & T's truck, Con Agg, and NYTR. The complaint alleged that Naomi Fincher was killed in the November 6, 1984 accident. The claim against NYTR was based upon its allegedly negligent loading of J & T's truck. The complaint sought damages of $10,000,000.

In or about March of 1986, a third action was commenced in the Supreme Court of the State of New York, County of Bronx, by Joseph Appleby against J & T, the driver of J & T's truck, the City of New York, Lone Star and NYTR, alleging that Mr. Appleby was severely injured in the November 6, 1984 accident. The claim against Lone Star and NYTR was based on

their allegedly negligent loading of J & T's truck. The complaint demanded damages in the amount of $5,000,000.

Liberty Mutual issued Blanket Public Policy No. RG1–612–004122–034 ("the Policy" or "Policy RG1") to Lone Star and other named insureds including NYTR for the period January 1, 1984 to January 1, 1985. The Policy consists of a printed form of Blanket Public Liability Policy and 35 written endorsements, only two of which, Endorsements 1 and 1A, are applicable here.

The Policy provides coverage for

all sums which the insured shall become obligated to pay as damages by reason of liability imposed upon the insured by law or assumed by the insured under contract because of

(A) Personal Injury, or

(B) Property Damage

to which this policy applies, caused by an occurrence.

Policy RG1, effective January 1, 1984 to January 1, 1985, Article I, page 1, annexed as Exhibit A to Affidavit of James A. Coyle, sworn to on November 13, 1987 (hereinafter "Coyle Aff."). The Policy limits Liberty Mutual's liability as follows:

the total liability of [Liberty Mutual] for all damages because of personal injury and/or property damage applicable to each occurrence shall be $1,000,000.

Subject to the above provision respecting each occurrence, the total liability of [Liberty Mutual] for all damages because of:

(1) all personal injury included within the completed operations hazard and personal injury included within the products hazard,

\*     \*     \*     \*     \*     \*

shall not exceed $1,000,000 "aggregate" for the policy period.

Policy RG1, Article IV, pages 3–4.

The completed operations hazard is defined as including:

personal injury and property damage arising out of operations or reliance upon a representations [sic] or warranty made at any time with respect thereto, but

only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.

Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include personal injury or property damage arising out of:

(a) the existence of tools, uninstalled equipment or abandoned or unused material, or

(b) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations"; ....

Policy RG1, Article VI, pages 4–5.

Plaintiffs promptly informed Liberty Mutual of the suits against them. Coyle Aff. ¶¶ 17, 19, 21. Liberty Mutual acknowledged coverage under the Policy, Coyle Aff. ¶¶ 17, 22; Affidavit of Francis J. Henderson, Esq., sworn to on December 10, 1987, (hereinafter "Henderson Aff."), ¶ 15, and informed plaintiffs that the "policy contract limits to $1,000,000 the liability of [Liberty Mutual] for damages recoverable in this action." Coyle Aff. ¶¶ 17, 22, and Exhibits D and I annexed thereto.

Each year, Lone Star and Liberty Mutual conduct a Claims Review at Liberty Mutual's home office in Boston, Massachusetts. The 1985 Annual Claims Review was held on June 3, 4 and 5, 1985. At the time of that review, the LaSalle and Fincher actions had been commenced. They were discussed at the meeting, but no mention was made of the possible applicability of the $1,000,000 aggregate limit. Coyle Aff. ¶ 23. The 1986 Annual Claims Review was held on May 21 and 22, 1986. All three actions arising out of the November 6, 1984 accident were discussed, but again the possible application of the $1,000,000 aggregate limit was not mentioned. Coyle Aff. ¶ 27.

On November 6, 1986, Lone Star and Liberty Mutual held a mini-Claims Review. Mr. Coyle attended the review on behalf of Lone Star. His uncontradicted account[1] of the meeting is as follows:

> At this mini-Claims Review, Mr. Masterson announced, for the first time in the two years since the November 6, 1984 accident, that Liberty Mutual considered the LaSalle, Fincher and Appleby actions to be part of the "completed operations hazard" and the "products hazard" for the 1984 policy period.

Coyle Aff. ¶ 30. After being notified of Liberty Mutual's intent to assert the $1,000,000 aggregate limit, plaintiffs commenced this suit on July 6, 1987, seeking a declaration that the $1,000,000 aggregate limit does not apply to the personal injury actions and that Liberty Mutual must continue to defend those actions.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrog-

atories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In the instant case, there are no material facts in dispute,[2] so the case is an appropriate one for summary judgment.

■ Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it is sitting, including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Aetna Casualty and Surety Co. v. General Time Corp.*, 704 F.2d 80 (2d Cir. 1983). New York courts have traditionally resolved choice of law issues involving insurance policies by applying the law of the state which the parties understood would be the principal location of the risk. *See, e.g., Steinbach v. Aetna Casualty and Surety Co.*, 81 A.D.2d 382, 385, 440 N.Y. S.2d 637, 640 (1st Dep't 1981). In the instant case, the policy was issued to Lone Star Industries, Inc. and additional named insureds including NYTR. Both parties have premised their briefs on the assumption that New York law applies. The truck was loaded in New York, and the accident occurred in New York. Thus, New York is the state most intimately concerned with the outcome in this case and the Court will therefore apply New York law. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 n. 5 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

■ Plaintiffs maintain that Liberty Mutual is prevented from denying coverage on theories of waiver and estoppel because of the two year delay in asserting the aggregate limit of liability. Waiver is the inten-

---

**1.** Where a party fails to controvert statements in support of a motion, although it had an opportunity to do so in its opposing affidavit, the facts set forth in the affidavit in support of the motion must be taken as true. *Saratoga Harness Racing Ass'n v. Moss,* 26 App.Div. 486, 275 N.Y. S.2d 888 (3d Dep't 1966), *aff'd,* 20 N.Y.2d 733, 283 N.Y.S.2d 55, 229 N.E.2d 620 (1967); *see also Kappus v. Western Hills Oil, Inc.,* 24 F.R.D. 123 (E.D.Wis.1959).

**2.** Defendant failed to file a statement pursuant to Rule 3(g) of the Civil Rules for the Southern District of New York. Accordingly, under the Local Rule, the statements in plaintiffs' 3(g) statement are deemed admitted. In this case, the operation of Rule 3(g) is not unduly harsh, for Liberty Mutual's version of the facts is no different from plaintiffs' version.

tional relinquishment of a known right. It is well settled in New York that waiver cannot create coverage where none existed in the first place. *See Albert J. Schiff Associates, Inc. v. Flack,* 51 N.Y.2d 692, 697–98, 435 N.Y.S.2d 972, 974–75, 417 N.E. 2d 84, 86–87 (1980). Thus, the Court must look to the underlying insurance agreement to determine if the conduct in question is subject to the aggregate limit of liability of the completed operations hazard. Failure to assert the aggregate limit, however, cannot create coverage under a theory of waiver where none existed under the policy.

In contrast to waiver, principles of estoppel can create coverage where the policy does not provide for coverage. But it is well settled that prejudice to the claimant must be shown. The usual instance in which estoppel operates in insurance cases was spelled out in *Flack:*

> Distinguished from waiver, of course, is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so.

51 N.Y.2d at 699, 435 N.Y.S.2d at 975, 417 N.E.2d at 87.

Prejudice must be present in order to invoke the doctrine of estoppel. *Tel–Tru Manufacturing Co. v. North River Ins. Co.,* 90 A.D.2d 670, 671, 456 N.Y.S.2d 287, 288 (4th Dep't. 1982); *Mattimore v. Patroon Fuels, Inc.,* 103 A.D.2d 981, 982, 479 N.Y.S.2d 839, 841 (3d Dep't 1984). Courts have often presumed prejudice from the fact that the insurer took over the defense of the case and deprived the insured of control of its case. In *Globe Indemnity Co. v. Franklin Paving Co.,* 77 A.D.2d 581, 430 N.Y.S.2d 109 (2d Dep't 1980), the court held that the insurer

> commenced this action for a declaration that it had no contractual liability to defend and indemnify the defendant paving company based upon a clause in its insurance policy which specifically excluded coverage for "completed operations." [The insurer], cognizant of the fact that respondent was being sued upon a "completed operation," nevertheless undertook the respondent's defense, answered, conducted depositions and, in all, delayed for more than 14 months after the institution of the underlying action before giving its insured notice of the purported disclaimer.

> \*    \*    \*    \*    \*    \*

> [P]rejudice must generally be established as the result of an unreasonable delay in disclaiming before an insurer will be estopped from asserting noncoverage. However, it is equally well settled that where an insurer has undertaken the defense of an insured, with knowledge of the facts constituting a defense to coverage under the policy, and where, during the interim, the insured is thereby deprived of control of his defense, the former may be estopped from asserting that its policy does not cover the underlying claim.

77 A.D.2d at 582, 430 N.Y.S.2d at 111 (citations omitted).

In the instant case, Liberty Mutual undertook the defense of the LaSalle action by letter dated January 4, 1985. Coyle Aff. ¶ 17, and Exhibit D annexed thereto. Liberty Mutual undertook the defense of the Fincher action some time after May 17, 1985. Coyle Aff. ¶ 19; Henderson Aff. ¶ 15. Liberty Mutual undertook the defense of the Appleby action by letter dated April 16, 1986. Coyle Aff. ¶ 22, and Exhibit I annexed thereto. Liberty Mutual did not assert the $1,000,000 aggregate limit on liability until November 6, 1986.

Plaintiffs assert that they relied to their detriment on the insurer's defense of the three tort actions:

> For two years, Lone Star allowed Liberty Mutual to control the LaSalle, Fincher and Appleby actions with attorneys selected by Liberty Mutual. The course of those actions has been established, the strategies determined, and substantial pre-trial discovery conducted, all without the active participation of Lone Star. It is no longer feasible, either practically or

economically, for Lone Star to retain its own attorneys to represent it in those actions. Coyle Aff., ¶ 49. Liberty Mutual's statement on November 6, 1986 that it considered the three actions within the aggregate limit of liability came long after it knew facts that would have informed it that the three cases came within the completed operations hazard. The insurer undertook the defense of all three actions with knowledge of the facts constituting the defense of completed operations, and cannot be heard now to complain that the actions fall under the completed operations hazard.[3]

Plaintiffs also seek a declaration that Liberty Mutual is estopped from abandoning the defenses of the three personal injury actions. This conclusion necessarily flows from the above discussion, but one caveat should be noted: The policy does contain a limitation of $1,000,000 per occurrence, and Liberty Mutual did assert the $1,000,000 limit in a timely fashion with regard to each of the personal injury actions. The policy does provide that Liberty Mutual "shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." Policy RG1, Article I, page 1.

Accordingly, Liberty Mutual is estopped from asserting the $1,000,000 annual aggregate limit on liability under the completed operations hazard of the policy. Liberty Mutual has, however, properly asserted the $1,000,000 per occurrence limitation.

3. Defendant argues that:
   Upon receipt of notification of the claims regarding the November 6, 1984 accident, Liberty Mutual advised Lone Star of the limitation of the policy and advised them of their right to obtain counsel and fully protect their interest.
   Although the aggregate policy limit of $1,000,000.00 for all three claims was not discussed until *some time thereafter*, Lone Star's representation was not jeopardized and they did not change their position in reliance upon Liberty's initial letters of a $1,000,000.00 per occurrence limitation.
   Defendant's Memorandum of Law in Opposition to Motion for Summary Judgment at 15.
   This argument lacks merit because of the vast difference between a $1,000,000 per occurrence

Liberty Mutual must defend NYTR and Lone Star, and, if necessary, indemnify them for any damages recovered against them in the personal injury actions up to $1,000,000 per occurrence.[4]

### CONCLUSION

It is hereby ordered that plaintiff's motion for summary judgment is granted and that summary judgment be entered in favor of plaintiffs.

SO ORDERED.

limitation and a $1,000,000 annual aggregate limit of liability for all occurrences, which limit was approaching exhaustion from unrelated silicosis claims totaling $930,986. Coyle Aff. ¶ 34 and Exhibit M annexed thereto.

4. In light of the Court's determination on the issue of estoppel, it is not necessary to determine whether the plaintiffs' loading of J & T's truck was a "completed operation" within the meaning of the Policy. If it was not a "completed operation," the result is the same as that reached here; if it was a "completed operation," Liberty Mutual is estopped from asserting that limitation for the reasons stated above.