896 F.Supp. 272 (1995)
CONTINENTAL INSURANCE COMPANY, Plaintiff,
v.
ESTATE OF Nicholas S. BENTON, d/b/a The Rigging Gang, Holland Village, Inc., Domino's Pizza, Inc., and Deborah K. Benton, Defendants.
No. 1:92-CV-1187.
United States District Court, N.D. New York.
September 6, 1995.
*273 James M. Brooks, Brooks & Meyer, Lake Placid, NY, for plaintiff.
George J. Koelzer, Lane Powell Law Firm, Los Angeles, CA, for defendants.

CORRECTED

OPINION AND ORDER
GAGLIARDI, Senior District Judge.
Plaintiff filed this declaratory judgment action seeking the resolution of questions regarding insurance coverage. Plaintiff and defendants have moved for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment is granted and defendants' motion is denied.

I. FACTS
Some of the issues involved in this case were previously covered in this court's opinion in Domino's Pizza, Inc. v. Estate of Nicholas S. Benton, d/b/a The Rigging Gang, 91-CV-1057, dated December 7, 1994, and amended on January 4, 1995, familiarity with which is assumed, and the following facts were stipulated to by the parties or found by the court.
Defendant Nicholas Benton owned, as sole proprietor, a business known as Benton d/b/a The Rigging Gang ("The Rigging Gang"). Among other things, The Rigging Gang constructed and serviced sailing ships. Prior to July 1988, defendant Holland Village, Inc. ("Holland") contracted with The Rigging Gang to build a replica of Henry Hudson's "Half Moon" at a dock in Albany, New York. In late June 1988, The Rigging Gang applied to plaintiff Continental Insurance Company ("Continental"), through an agent, for two insurance policies: a Workers Compensation and Employers Liability policy ("WC policy") and a Commercial General Liability policy (hereinafter "CGL policy"). Continental subsequently issued these policies.
Relevant to this opinion are specific representations made by The Rigging Gang in relation to the CGL policy. In the application, The Rigging Gang described the type of work as "boat builder." The risk to be insured "involves construction of a vessel." The CGL policy itself provides a business description of "boat builders," and the classification of insurance is "boat or ship bldg." No mention was made of any other type of work, such as servicing.
From July 1, 1988 to June 19, 1989, The Rigging Gang worked continually on the "Half Moon" project, which was scheduled for completion in July 1989. The number of workers that The Rigging Gang employed on this project ranged from three to twelve during this period.
Some time before June 19, 1989, defendant Domino's Pizza, Inc. ("Domino's") hired The Rigging Gang to perform rigging work on the vessel "Domino Effect" at a port in Rensselaer, New York. In order for the vessel to pass through the New York Barge Canal, the mainmast had to be unstepped and later restepped at Oswego. Domino's hired Benton, owner of the Rigging Gang and an experienced rigger, to perform these services. On June 19, 1989, Benton was loosening the mainmast when it snapped near its base. As a result, the mainmast fell and struck the stringpiece, carrying Benton with it. Benton also struck the stringpiece, causing serious injuries from which he died shortly thereafter.
*274 These events gave rise to three separate lawsuits. The legal bases of the suits are complicated by the fact that Benton was not only the injured party, but also the businessman who contracted with Holland, Domino's, and Continental. First, Deborah Benton, defendant Benton's wife, brought an action, individually and as administratrix for Benton's estate, against Domino's for negligence (90-CV-53), based on the alleged unseaworthiness of the "Domino Effect." The case went to trial, but the parties reached a settlement prior to verdict. Second, Domino's initiated a suit against The Rigging Gang (91-CV-1057) seeking indemnity for the amount Domino's paid in settling the first action. This Court ruled that The Rigging Gang must indemnify Domino's; since Benton's negligence contributed to the accident, The Rigging Gang breached the warranty of workmanlike performance that it owed to Domino's. Third, Continental brought the instant action (92-CV-1187) seeking a determination of whether the two policies held by The Rigging Gang provide coverage for the accident and require Continental to indemnify The Rigging Gang for the liability found in the second suit.

II. Standard for Summary Judgment
Summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must "view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion...." Gallien v. Connecticut Gen. Life Ins. Co., 49 F.3d 878, 882 (2nd Cir.1995) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

III. Discussion

A. Waiver of Defenses
Defendants assert that some of plaintiff's contentions are ineffective under the doctrine of waiver. After claims were filed with Continental based on Benton's death, Continental disclaimed liability. The defendants argue that Continental cannot now make any arguments disclaiming liability that were not included in the original disclaimer letters.
The doctrine of waiver is not applicable in this case. Generally, an insurer cannot raise at trial grounds for non-coverage that were not stated in the letter of disclaimer. General Accident Ins. Group v. Cirucci, 46 N.Y.2d 862, 414 N.Y.S.2d 512, 387 N.E.2d 223 (1979); Reed v. Commercial Union Ins. Co., 97 A.D.2d 949, 468 N.Y.S.2d 738 (1983). However, "where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable." Schiff Assoc., Inc., v. Flack, 51 N.Y.2d 692, 698-99, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980). See also, Zappone v. Home Ins. Co., 55 N.Y.2d 131, 447 N.Y.S.2d 911, 432 N.E.2d 783 (1982); Sedgwick Ave. Assoc. v. Insurance Co. of State of Penn., 203 A.D.2d 93, 610 N.Y.S.2d 39 (1994).
In the instant case, Continental's defenses relate to the scope of the insuring clause, not other conditions of coverage such as the timely reporting of claims by the insured. Therefore, none of Continental's arguments are precluded by waiver.

B. Workers Compensation Policy
For coverage under the WC policy to apply, the injured person must be an "employee." This is true whether coverage is sought under Part One of the policy (Workers Compensation Insurance) or Part Two (Employers Liability Insurance). Benton was not an employee in this case.
First, Benton does not fit the definition of employee under New York Workers Compensation law. N.Y. WORK COMP § 2 subd. 3 (McKinney's 1992) defines an employer as "... a person ... having one or more persons in employment...." Benton clearly fits this definition. One could argue that Benton also fits the definition of "employee" in subd. 4, but this argument is undermined by the way that the Workers Compensation law explicitly addresses a sole proprietorship. Section 54 subd. 8 provides that a self-employed person must elect to be included as an employee for purposes of a *275 Workers Compensation insurance policy. In the instant case, the parties have stipulated that Benton never so elected. Therefore, Benton was a self-employed employer and not an employee under Workers Compensation law.[1]
Second, this finding is consistent with Judge McAvoy's ruling in the first action (90-CV-53). In the context of the Longshoreman's and Harbor Worker's Compensation Act, Judge McAvoy ruled that:
... Benton was not an employee under the Act. He was not engaged in maritime employment because he was an employer and not an employee.... The decedent and his wife owned a business called the Shiprigging Gang and that existed in some form.... But the man was an employer, not an employee under any sense of the Act.
Transcript of hearing on June 10, 1991, at 3, included as Exhibit 2 to the Stipulation of Facts. Although that Act is not at issue here, the reasoning behind Judge McAvoy's ruling applies fully.
In sum, this Court finds that Benton was not an employee under the terms of the WC policy. Consequently, the WC policy does not provide coverage for Benton's accident.

C. Commercial General Liability Policy
The CGL policy does not provide coverage for two reasons. First, Benton's accident was beyond the scope of the insurance policy. As described above, see section I, the Rigging Gang made representations as to the scope of its work in its application for insurance. Continental relied upon those representations and incorporated them into the Declarations Page of the policy itself. Since the classification of insurance is "boat or ship bldg.", the servicing of ships is not included in the CGL policy. In contrast, the WC policy, also issued by Continental, classified the insurance as "boat building or repairing." The CGL policy never created coverage for the accident at issue. Schiff, supra (holding that willful misappropriation of trade secrets fell outside of a policy insuring against professional errors and omissions). See also, Employers Ins. of Wausau v. County of Nassau, 141 A.D.2d 496, 530 N.Y.S.2d 157 (1988); Bianco v. Travelers Ins. Co., 99 A.D.2d 629, 472 N.Y.S.2d 184 (1984).
Second, even if the accident fell within the scope of the insuring clause, the injury to Benton would be excluded. The policy gives no guidance as to the definition of "employee." Nonetheless, Benton would be an employee under the CGL policy. Defendants argue that this finding would be a logical impossibility, given that the Court has found Benton not to be an employee under the WC policy. However, this apparent contradiction results from the unusual circumstance that the employer (The Rigging Gang) and the injured party (Benton) are the same person. Taking the two insurance policies together, the WC policy is clearly meant to insure the employer against injuries to persons within the organization, while the CGL policy is intended to protect the employer from liability for injuries to third parties (hence the employee exclusion). In this context, the employer is usually a legal entity, not a real person, and, thus, the policies do not contemplate an injury to an employer. This is the gap that precludes recovery by The Rigging Gang. Section 54 of the Workers Compensation law attempts to close this gap by providing a procedure that allows the self-employed person to be treated as an employee, but Benton failed to take advantage of this provision. The Court refuses to adopt a tortured interpretation of the CGL policy's intent in order to remedy Benton's neglect.
In sum, the Court finds that Benton's accident falls outside the scope of coverage created by the CGL policy. In the alternative, Benton would be treated as an employee for purposes of the CGL policy, and the accident would be excluded from liability under Exclusion *276 2(e). Therefore, the CGL policy does not provide coverage for Benton's accident.
The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

IV. CONCLUSION
For the reasons stated, plaintiff's motion for summary judgment is granted, and defendants' motion for summary judgment is denied. Let the Clerk enter judgment accordingly.
So ordered.
NOTES
[1] Defendants argue that the § 54 election requirement applies only to Part One of the WC policy. However, Part Two of the policy provides coverage only for "bodily injury [arising] out of and in the course of the injured employee's employment by" The Rigging Gang (emphasis added). Therefore, Benton's status as an employee or employer is determinative under Part Two as well.