Catherine McLEAN, Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY and The Prudential Insurance Company of America, Defendants.

No. 95 Civ. 10415 (HB).

United States District Court, S.D. New York.

Jan. 27, 1997.

---

Telma Munster Grayson, Anderson Kill Olick & Oshinsky, P.C., New York City, Robert M. Horkovich, Joan L. Lewis, Anderson Kill Olick & Oshinsky, P.C., New York City, for Catherine McLean.

Joseph P. Altman, Jr., McCormick Dunne & Foley, New York City, for Continental Casualty Company.

Edward D. Greenberg, Schwartz & Greenberg, New York City, for Prudential Insurance Co. of America.

## OPINION AND ORDER

˙BAER, District Judge:

### I.  *Introduction*

Plaintiff, Catherine McLean, filed an amended complaint seeking to recover accidental death benefits allegedly due from The Prudential Insurance Company of America ("Prudential") and Continental Casualty Company ("Continental").  Plaintiff claims that her husband was covered under the Defendants' insurance plans.  She contends that the accidental injury clause in Prudential's policy was applicable to her husband who contracted meningococcal meningitis and died.  Each of the defendants denied coverage for different reasons.  Plaintiff also claims that defendants breached their fiduciary duties in denying her claims.

Defendant Prudential[1] moved this Court to dismiss Plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56(e), arguing (1) that plaintiff's husband's death was not the direct result of an accidental bodily injury as required by the policy and (2) that Defendant owes no fiduciary duty to Plaintiff.  By Order dated October 25, 1996, I denied Defendant's motion with leave to renew after the close of discovery.

Defendant Prudential now renews its motion.  In addition to the arguments that Prudential originally made, it also now argues that dismissal is proper because Mr. McLean's death was excluded by its policy.  For the reasons stated below, the defendant's motion for summary judgment is GRANTED.

1.  Defendant Continental did not join in Prudential's first motion and does not join in Prudential's renewed motion now.

## II. *Background*

From 1986 until the date of his death, Theodore McLean was an employee of National Westminster Bank USA ("NatWest"). On the evening of October 23, 1993 after returning home from a business trip to England for NatWest, Mr. McLean began experiencing symptoms such as fever and vomiting. On October 26, 1993 Mr. McLean died of septicemia, or blood poisoning, caused by the microorganism meningococcus. On or about December 9, 1993 Prudential paid the term life insurance proceeds of approximately one million dollars to an irrevocable trust of which plaintiff is the sole beneficiary. Furthermore, Prudential approved plaintiff's claim for survivor benefits in the amount of $10,000 per month.

On December 15, 1995, plaintiff, Theodore McLean's widow, submitted a claim to Prudential under the Group Insurance Policy (the "Policy") covering her husband seeking payment of benefits for accidental death and disability. The Policy provides, in pertinent part, that benefits for accidental death will be payable only if

[the insured] sustain[s] an accidental bodily injury while a covered person;

the loss results directly from that injury and no other cause;

[the insured] suffers the loss within 90 days after the accident.

The Policy states that benefits are not payable if the loss resulted from

(2) Sickness, whether the loss results directly or indirectly from the sickness
. . .

(4) Any infection, unless it is pyogenic and occurs through and at the time of an accidental cut or wound.

Injury is defined as "Injury to the body" and sickness as "any disorder of the body or mind of [an insured], but not an Injury." The Policy does not define "accidental" or "infection."

On February 1, 1996 Prudential sent a letter to Plaintiff denying this additional coverage because Mr. McLean's "death was not

a result of accidental bodily injuries and the loss was the result of a sickness." Ex. 6 Def's 3(g) Stmnt. Prudential based its conclusion on a November 11, 1994 letter from the doctor who had admitted Mr. McLean to Norwalk Hospital before his death and "various other documents" from its file. This lawsuit ensued.

## III. *Discussion*

I treat Prudential's motion as one for summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. Such motions may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of demonstrating that no issue of genuine fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Furthermore, in deciding a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Miller v. Heller,* 915 F.Supp. 651 (S.D.N.Y.1996). Once the moving party demonstrates that there is no genuine issue, the burden is on the nonmoving party to prove there is a genuine issue for trial.

Defendant argues that summary judgment is proper because Mr. McLean's death is specifically excluded under the Policy as his death resulted from a sickness or infection that was not pyogenic[2] occurring through an accidental cut or wound. Plaintiff argues that her claim should not be dismissed because (1) Defendant has waived the "infection" exclusion by failing to rely on it in its denial of coverage letter of February 1, 1996 and (2) even if the infection exclusion is not deemed waived, Defendant cannot sustain its burden of establishing that the exclusionary clause applies because the Policy language is ambiguous.

### 1. *Waiver*

It is well-settled law in New York that an insurer may "waive the right to disclaim [coverage] based on the insured's non-compliance with a condition precedent" by failing to

---

**2.** A pyogenic infection is one characterized by purulence, which refers to pus-producing bacte-

ria. Deposition of Dr. Arthur Yee at p. 44 ("Yee Dep.").

include such a reason in disclaimer letters sent to the insured. *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 323, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (*"NYU"*). *See also New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1429–33 (2d Cir.1991) (holding that insurance company waived its late notice-of-occurrence defense to coverage by not including such a defense in letters to the insured). This doctrine of waiver "evolved because of courts' disfavor of forfeitures of the insured's coverage which would otherwise result where an insured breached a policy condition." *Albert J. Schiff Assocs. v. Flack*, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980) (*"Schiff"*).

■ It is equally well settled law, however, that an insurer's right to disclaim coverage based on a policy *exclusion* is not waivable, and can only be defeated by estoppel. *NYU*, 87 N.Y.2d at 323, 639 N.Y.S.2d 283, 662 N.E.2d 763. Indeed, the New York Court of Appeals has held that "where the issue is the existence or non-existence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable." *Schiff*, 51 N.Y.2d at 698–99, 435 N.Y.S.2d 972, 417 N.E.2d 84. In such a case, the insurer does not waive its right to deny coverage based on one exclusion by relying on another exclusion first. The failure to disclaim coverage based on an exclusion will not give rise to coverage that does not exist. *NYU*, 87 N.Y.2d at 323, 639 N.Y.S.2d 283, 662 N.E.2d 763.[3]

■ Defendant argues that the cause of Mr. McLean's death is specifically excluded under the Policy's exclusions relating to loss due to sickness or infection. That Defendant's initial letter to Plaintiff denying Policy benefits stated that coverage was being denied because "the loss was the result of sickness" did not result in Defendant waiving its ability to raise the infection exclusion now to deny coverage.[4] *See, e.g., N.Y.U.*, 87 N.Y.2d at 323, 639 N.Y.S.2d 283, 662 N.E.2d 763. The inquiry then is if a genuine issue of fact exists as to whether or not the claimed loss is excluded under the Policy.

### 2. Exclusion for Loss the Results from Infection

■ To disclaim coverage because of a policy exclusion, "an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Casualty Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993) (*"Rapid–American"*). Prudential has met that burden.

■ It must first be determined whether the infection exclusion in the Policy as applied to plaintiff's claim is ambiguous. *Id.* Contract language is unambiguous if it has a " 'a definite and precise meaning ... and concerning which there is no reasonable basis for a difference of opinion.' " *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.1990) (citation omitted). Unambiguous terms are to be given their plain and ordinary meaning. *New York v. Blank*, 27 F.3d 783, 792 (2d Cir.1994). Moreover, exclusionary language can be ambiguous in some circumstances and not in others. *Id.* at 652–53, 593 N.Y.S.2d 966, 609 N.E.2d 506. Finally, language is not ambiguous simply because one party so urges. *Metropolitan Life*, 906 F.2d at 889.

---

**3.** The Court is aware of other cases holding that an insurer must promptly disclaim liability upon an exclusion in the policy or else forfeit the right to rely on that exclusion. *See Squires v. Town of Islip*, 697 F.2d 66, 68–69 (2d Cir.1982); *Zappone v. Home Insurance Co.*, 55 N.Y.2d 131, 447 N.Y.S.2d 911, 432 N.E.2d 783 (1982). However, there the courts applied the principle in *Schiff* to cases involving interpretation of N.Y.Ins.Law § 167(8). The New York Court of Appeals continues to apply *Schiff* in cases not governed by that statute, as here. *NYU*, 87 N.Y.2d at 323, 639 N.Y.S.2d 283, 662 N.E.2d 763.

**4.** It should also be noted that Defendant's letter did mention that the Policy does not cover "loss which results from ... any infection, unless it is pyogenic and occurs at the time of an accidental cut or wound." Ex. 6 Def's 3(g) Stmnt. Therefore, although Plaintiff does not argue that Defendant should be estopped from asserting this exclusion, there is nothing to indicate that Defendant did anything to lead Plaintiff to believe that it may provide coverage for the claimed loss. *NYU*, 87 N.Y.2d at 323, 639 N.Y.S.2d 283, 662 N.E.2d 763.

■ Here, the term "infection" is not ambiguous as applied to Mr. McLean's death of septicemia due to the bacterial infection meningococcus. The word "infection" has a definite and precise meaning: "a disease resulting from the presence of certain microorganisms or matter in the body." Webster's New Universal Dictionary 937 (2d ed. 1983). In this case, Plaintiff does not deny that Mr. McLean died from septicemia which resulted from the bacteria meningococcus. *See also* Yee Dep. at p. 38–39. The doctor who admitted Mr. McLean to Norwalk Hospital before his death, Dr. Arthur Yee (a Infectious Diseases specialist), stated in his letter of November 11, 1994 to Prudential that Mr. McLean "acquired this infection" on a business trip to London. Ex. 5–I of Def's 3(g) Stmnt. Significantly, Dr. Yee's deposition testimony is replete with references to, and explanations of how Mr. McLean contracted, the bacterial infection that caused his death. Yee Dep. at pp. 14, 18, 36, 39, 42–43. Here, for me at least, it is beyond peradventure that Mr. McLean's death falls squarely within the ordinary meaning of the term "infection." *See, e.g., Rapid–American,* 80 N.Y.2d at 653–54, 593 N.Y.S.2d 966, 609 N.E.2d 506 (holding the pollution exclusion in an insurance policy was ambiguous because it was unclear on its face whether the term "atmosphere" contemplated release of asbestos into a confined space).

Plaintiff argues that the terms "sickness" and "infection" are so ambiguous that Defendant's own claims examiner could not articulate the difference between the two terms. Deposition of Bernadette Kushner at p. 55–56. However, plaintiff does not offer another reasonable interpretation of the meaning of the word "infection." She merely argues that it is ambiguous. This, without more, is not sufficient to establish a triable issue of fact. *See Goenaga v. March of Dimes,* 51 F.3d 14, 18 (2d Cir.1995).

Viewing the record in the light most favorable to Plaintiff, there is no genuine issue of fact as to the applicability of the infection exclusion. The Policy clearly stated that loss due to infection is excluded, Defendant has established that this language is open to no other reasonable interpretation under the circumstances here, ergo the exclusion applies. Plaintiff's claim is excluded as the loss was the result of an infection.[5] Consequently, her complaint must be dismissed as against defendant Prudential.

Because I have decided the motion on this basis, I do not reach the parties' other arguments here.

### IV. *Conclusion*

For the reasons stated above, defendant's motion for summary judgment is GRANTED. The Defendant's motion for attorneys' fees is DENIED. We will proceed to trial at 9:30 a.m. on February 3, 1997 against Continental. They failed to move for summary judgment.

SO ORDERED.

---

5. Plaintiff does not allege that Mr. McLean's death arose due to a pyogenic wound, nor does the record suggest that is the case. Yee Dep. at p. 44 (stating that he would not characterize Mr. McLean's infection as a pyogenic infection because "he didn't have any wounds or injuries").