**BLUESTEIN & SANDER, Martin J. Bluestein and Ronni Sander, Plaintiffs–Appellees,**

v.

**CHICAGO INSURANCE COMPANY, Defendant–Appellant.**

**Docket No. 01–7286.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 2001.

Decided Jan. 9, 2002.

Steven A. Coploff, Steinberg & Cavaliere, LLP, White Plains, NY, for Defendant–Appellant.

Martin J. Bluestein, Bluestein & Sander, Pound Ridge, NY, for Plaintiffs–Appellees.

Before CARDAMONE, McLAUGHLIN, and SOTOMAYOR, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This case compels us to analyze estoppel principles in the context of a malpractice insurance policy issued by the defendant to the plaintiff law firm. We rule that the district court correctly concluded that the insurer was estopped from disclaiming coverage to the law firm.

## BACKGROUND

In 1996, Chicago Insurance Company ("CIC") issued a lawyers' professional liability insurance policy to the law firm of Bluestein & Sander, and its partners Martin Bluestein and Ronni Sander (collectively, "Bluestein"). The policy covered Bluestein for malpractice and promised to indemnify Bluestein for damage awards, described as "compensatory judgments, settlements or awards." The coverage, however, specifically excluded "the return of fees or other consideration paid to the Insured."

The following year, DFJ Capital Corporation ("DFJ") sued Bluestein for legal malpractice. In the complaint, DFJ listed

"legal fees," without further clarification, as part of the damages sought. Bluestein promptly forwarded a copy of the complaint to CIC. When it got the complaint, CIC designated the law firm Silverman, Collura, Chernis & Balzano ("Silverman") to represent Bluestein in the malpractice matter. CIC did not disclaim coverage for the return to DFJ of legal fees it had paid to Bluestein.

The Silverman firm answered the malpractice complaint and conducted pre-trial discovery on behalf of Bluestein. In December 1998, CIC received a copy of DFJ's interrogatory responses, which specifically referred to "[l]egal fees incurred" as part of the damages DFJ sought against Bluestein. DFJ's interrogatory responses made perfectly clear that DFJ wanted the return of fees that they had paid to Bluestein for legal services. DFJ claimed that they had paid Bluestein for legal services that "had no value." Nine months later, CIC, citing those interrogatory responses, informed Bluestein for the first time that it was disclaiming coverage with respect to the portion of any award for the return of legal fees. CIC based its disclaimer on the language contained in the policy excluding coverage for the "return of fees or other consideration paid to the Insured."

Shortly thereafter, Bluestein commenced this action in New York State Supreme Court. CIC removed the action to the United States District Court for the Southern District of New York (Casey, *J.*). Bluestein then moved for summary judgment on grounds that: (1) CIC was obligated to indemnify them for *all* sums at issue in the malpractice case up to the policy limits, including legal fees incurred; and (2) even if such legal fees were excluded under the policy, CIC should be estopped from disclaiming coverage.

The district court granted Bluestein's motion for summary judgment, holding that, under New York law, CIC was estopped from asserting a defense to coverage—even if valid—because it had unreasonably delayed issuing its disclaimer and Bluestein had been prejudiced as a result. *Bluestein & Sander v. Chi. Ins. Co.*, No. 99 Civ. 11519, 2001 WL 167707, at *3–*4 (S.D.N.Y. Feb.20, 2001). Specifically, the court stated that, as a matter of law, CIC's delay of more than two years after its receipt of DFJ's complaint, and nine months after its receipt of DFJ's interrogatory responses, was unreasonable. *Id.* at *3. By the time CIC disclaimed, the district court noted, discovery was "substantially complete with respect to defense issues." *Id.* at *4. In addition to the actual prejudice suffered by Bluestein, the district court held that prejudice to Bluestein could be presumed under New York law because CIC had issued its disclaimer only after controlling Bluestein's defense for over two years. *Id.*

CIC now appeals, arguing that the district court erred in applying estoppel to create coverage expressly excluded in the insurance policy.

For the reasons set forth below, we affirm the district court.

## DISCUSSION

■ We review a district court's grant of summary judgment *de novo*, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 40–41 (2d Cir.2000). Summary judgment is appropriate only if it can be established that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

"The parties' briefs assume that New York law controls this dispute, and such implied consent is sufficient to establish choice of law." *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000). Where New York law is unsettled, this Court is obligated to predict carefully how the state's highest court would resolve the uncertainty. *Id.* at 297. In making this prediction, we give the "fullest weight" to pronouncements of the state's highest court, while giving "proper regard" to relevant rulings of the state's lower courts. *Id.*

■ Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay. *Globe Indem. Co. v. Franklin Paving Co.*, 77 A.D.2d 581, 430 N.Y.S.2d 109, 111 (2d Dep't 1980). Further, prejudice to an insured may be presumed "where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." *Albert J. Schiff Assocs. Inc. v. Flack*, 51 N.Y.2d 692, 699, 435 N.Y.S.2d .972, 417 N.E.2d 84 (1980); *Globe Indem. Co.*, 430 N.Y.S.2d at 111.

## A. Delay

■ CIC rejects the charge that it unreasonably delayed disclaiming coverage for the return of legal fees. The reasonableness of any delay is "judged from the time that the insurer is aware of sufficient facts to issue a disclaimer." *Mount Vernon Fire Ins. Co. v. Unjar*, 177 A.D.2d 480, 575 N.Y.S.2d 694, 696 (2d Dep't 1991). CIC admits that it received a copy of the DFJ malpractice complaint in July 1997 but argues that the label "legal fees" alleged in that complaint as part of DFJ's damages was ambiguous. We need not resolve this question, because when CIC got around to disclaiming coverage, in September 1999, it relied on interrogatory responses from December 1998 as the basis for disclaimer. Even though CIC certainly knew from those responses that DFJ was seeking a refund of legal fees paid, CIC still waited nine months to disclaim. CIC offered no reason for this lengthy delay, which under New York law is plainly unreasonable. *See Hartford Ins. Co., v. County of Nassau*, 46 N.Y.2d 1028, 1030, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979) (holding that an unexplained two month delay in disclaiming coverage was unreasonable as a matter of law).

## B. Prejudice

■ CIC also argues that the district court erred in "presuming" prejudice rather than actually determining whether there was true prejudice. Again, under New York law, prejudice to an insured may be presumed where "an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." *Flack*, 51 N.Y.2d at 699, 435 N.Y.S.2d 972, 417 N.E.2d 84. In such cases, "though coverage as such does not exist, the insurer will not be heard to say so." *Id.* (citing *O'Dowd v. Amer. Sur. Co. of N.Y.*, 3 N.Y.2d 347, 355, 165 N.Y.S.2d 458, 144 N.E.2d 359 (1957)); *see also Touchette Corp. v. Merchants Mut. Ins. Co.*, 76 A.D.2d 7, 429 N.Y.S.2d 952, 955 (4th Dep't 1980)(stating that "proof of prejudice may be implied where the insurer has complete control of the defense"). Here, CIC's des-

ignated counsel, Silverman, controlled Bluestein's defense for over two years before any disclaimer by CIC. Consequently, prejudice must be presumed.

In any event, Bluestein suffered actual prejudice. Silverman conducted Bluestein's defense almost to the close of discovery before CIC disclaimed coverage on a ground then advanced for the first time. Despite Bluestein's limited *pro se* participation in preparation of the answer and possibly in depositions, there is no evidence in the record that either Silverman or Bluestein explored the significance of DFJ's claim for the return of legal fees. Because of CIC's dilatory disclaimer, targeted discovery regarding this issue was no longer possible, or, at the very least, was seriously compromised.

## C. Public Policy

As a last refuge, CIC contends that, under New York law, public policy bars estoppel where it would provide coverage for the return of "ill-gotten gains," a label that CIC would append to the fees Bluestein received from DFJ. Indemnification agreements in New York "are unenforceable as violative of public policy only to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury." *Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 676, 496 N.Y.S.2d 410, 487 N.E.2d 267 (1985). Bluestein's malpractice was alleged to be its failure to commence DFJ's action on a promissory note before the statute of limitations expired. There is simply nothing in the record to support the conclusion that Bluestein intentionally set out to injure its client, DFJ.

## CONCLUSION

We have considered CIC's other arguments and find them to be without merit.

Therefore, the judgment of the district court is hereby AFFIRMED.