303 F.3d 419
 INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff-Counter-Defendant-Appellee,
Zurich Insurance Company, Defendant-Appellee,
v.
LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant-Counter-Claimant-Appellant,
Liberty Mutual Insurance Co., Defendant-Counter-Claimant.
 Docket No. 01-9065.
 United States Court of Appeals, Second Circuit.
 Argued: April 23, 2002.
 Decided: September 6, 2002.
 
 Thomas H. Sear, Jones, Day, Reavis & Pogue, New York, N.Y. (Steven C. Bennett and Mark R. Seiden on the brief), for Plaintiff-Counter-Defendant-Appellee.
 Joseph G. Blute, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, MA, (Marshall Potashner and Darin Billing, Jaffe & Asher LLP, New York, N.Y. on the brief), for Defendant-Counter-Claimant-Appellant.
 John M. Eickenmeyer, Vedder, Price, Kaufman & Kammholz, New York, N.Y. (Thomas W. Brunner, Thomas W. Queen, Alysa B. Wakin, Wiley, Rein & Fielding, LLP, Washington, DC), for Defendant-Appellee.
 Before: McLAUGHLIN, F.I. PARKER, and SOTOMAYOR, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 Defendant, insurance company Liberty Mutual, appeals from the district court's ruling that Liberty Mutual had a duty to defend the underlying tort claim against plaintiff International Business Machines. We agree that defendant had a duty to defend based on the allegations contained in the underlying complaint. We also conclude that the extrinsic evidence offered by Liberty Mutual does not relieve it of its duty to defend. Finally, we hold that defendant insurance company Zurich has a duty to indemnify plaintiff in the underlying action only if and when Liberty Mutual's coverage has been exhausted.
 
 BACKGROUND
 
 2
 Since 1996, International Business Machines ("IBM") has been sued by dozens of current and former IBM employees who allege that they were injured as a result of exposure to chemicals while working at IBM facilities. Plaintiffs in those lawsuits include numerous children of IBM employees who allege they sustained bodily injury as a result of their parents' workplace exposure to chemicals both prior to conception and during gestation.
 
 A. The Ruffing Complaint
 
 3
 For a number of years, IBM has purchased Workers Compensation and Employers Liability insurance policies from two related insurance companies, Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company (collectively, "Liberty Mutual"). In 1985, Liberty Mutual issued a Workers Compensation and Employers Liability Insurance policy to IBM. The relevant portions of the policy stated:
 
 
 4
 [Liberty Mutual] will pay all sums [IBM] legally must pay as damages because of bodily injury to [IBM's] employees, provided the bodily injury is covered by this Employer's Liability Insurance. The damages [Liberty Mutual] will pay, where recovery is permitted by law, include damages:
 
 
 5
 * * * * * *
 
 
 6
 3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee ... provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by [IBM] ...
 
 
 7
 Zachary Ruffing ("Zachary") is a minor child of two former IBM employees, Faye Calton and Michael Ruffing. In August 1996, a group of plaintiffs filed suit, Ruffing v. Union Carbide, in the Supreme Court, New York. In that complaint, a large number of plaintiffs asserted "toxic tort" claims against IBM and certain manufacturers arising out of their exposure to chemicals at IBM semiconductor manufacturing facilities. Zachary Ruffing and other minor children of former or present IBM employees were dubbed the "infant plaintiffs."
 
 
 8
 In the complaint, the plaintiffs alleged, in pertinent part, that: (1) plaintiffs and/or plaintiffs' decedents were employed in IBM plants and plaintiffs and/or plaintiffs' decedents work at those plants resulted in prolonged exposure to harmful chemicals; (2) "one or both of the parents of each infant Plaintiff was exposed to said chemicals prior to and/or subsequent to the conception of each infant Plaintiff and each infant Plaintiff was thus exposed to and harmed by said chemicals prior to the birth as a result of their parent's or parents' exposure," and (3) "[a]s a result of exposure to said chemicals, the Plaintiffs and Plaintiffs' decedents suffered, and the Plaintiffs will continue to suffer, serious bodily injury, illness and disease, and have and will incur substantial medical expenses."
 
 
 9
 Immediately upon receipt of the complaint, IBM tendered the Ruffing complaint to Liberty Mutual for a defense. Liberty Mutual did not respond at that time. In March 1997, the state court ordered each plaintiff in the Ruffing action to file a Supplemental Bill of Particulars. Calton's supplemental filing alleged a claim of "conception/gestational injury ... on behalf of minor son of exposed mother and father." In October 1998, the state court severed Zachary's claim from the Ruffing action for expedited discovery and trial.
 
 
 10
 During discovery of the severed Ruffing claim, Calton answered to an interrogatory that she was "not claiming any direct bodily injury to herself at this time. However, she is not waiving any right that she may possess, to file an action in the future, on her own behalf, for any disease, injury or condition which may be diagnosed, and become manifest in the future."
 
 
 11
 In early 1999, IBM moved to dismiss Zachary's "pre-conception" tort claims. Zachary's counsel responded that the claim is that "the injury inflicted was directly inflicted on the infant plaintiff and not on his parents" and stated that neither parent, "as far as they are now aware, themselves sustained any bodily injury." The court denied IBM's motion.
 
 
 12
 Ultimately, in early 2001, the parties reached a settlement on the eve of trial and Zachary's claims against IBM were dismissed. At this juncture, IBM gave thought to recovering its litigation costs from its insurers.
 
 B. Liberty Mutual's Position
 
 13
 IBM (through its insurance broker) had earlier contacted Liberty Mutual several times after its receipt of the Ruffing complaint, each time asking Liberty Mutual whether it would defend the Ruffing action. Liberty Mutual did not respond to these requests until November 1999 — over three years after IBM sent the complaint to Liberty Mutual — at which time Liberty Mutual disclaimed any obligation to defend, stating:
 
 
 14
 In the above-mentioned action, the Infant Plaintiffs' alleged damages do not arise from "bodily injury to [IBM's] employees," are not "the direct consequences of bodily injury that arises out of and in the course of the injured employee's employment by [IBM]" ... Moreover, the Infant Plaintiffs' alleged damages do not arise from "bodily injury by accident or disease ... by any employee of the injured."
 
 C. The General Liability Insurance
 
 15
 In addition to the Liberty Mutual insurance coverage, IBM had also purchased a series of general liability policies from Zurich Insurance Company ("Zurich") from 1962 to 1995. Zurich, as General Liability ("GL") Insurer, acknowledged that certain of its policies provided for payment of IBM's defense costs incurred in the Ruffing claim. Zurich, however, noted that its policies issued between 1962 and 1979 provided, "[t]he insurance afforded by this policy shall be in excess over any other valid and collectable insurance." The policies issued from 1979 through 1995 also stated that "the insurance afforded by this policy shall be in excess, ... of and shall not contribute with such other insurance." The "other insurance" clauses in the Liberty Mutual policies for the relevant time periods provided for pro rata sharing of the covered obligation with the insured's other insurance policies.
 
 D. The Present Action
 
 16
 In July 2000, IBM filed this action in the United States District Court for the Southern District of New York (Brieant, J.). It sought a declaration that both Liberty Mutual and Zurich are obligated to reimburse IBM for defense costs incurred by IBM in connection with the underlying Ruffing claim. IBM moved for partial summary judgment, asking that the court declare that Liberty Mutual had a duty to defend the Ruffing claim. Zurich also moved for partial summary judgment seeking a declaration that Liberty Mutual and Zurich have concurrent coverage obligations but that Zurich's coverage is in excess of Liberty Mutual's primary obligation.
 
 
 17
 In September 2001, the district court ruled in favor of both IBM and Zurich, concluding that, although the Ruffing complaint does not seek damages for bodily injury suffered by Zachary Ruffing's parents, this does not require a holding that the parents did not "suffer injury sufficient to bring Zachary within the coverage of the policy". The district court reasoned that:
 
 
 18
 The Ruffing Complaint contains allegations against IBM which establish a "reasonable possibility" or "potential" that it will be demonstrated that:(1) Zachary Ruffing's parents were employed by IBM; (2) one or both of his parents suffered "bodily injury" as a result of prolonged exposure to and/or ingestion of chemicals at their workplace; and (3) as a consequence of the "injury" suffered by one or both of his parents, Zachary Ruffing suffered bodily injury.
 
 
 19
 The district court held that this "`reasonable possibility' or `potential' gives rise to Liberty Mutual's `exceedingly broad' duty to defend IBM in the Ruffing action." The court also ruled that Zurich's liability, if any, "is to insure IBM in the Ruffing action only when and if Liberty Mutual's coverage is exhausted."
 
 
 20
 Liberty Mutual now appeals, arguing that the district court erred in ruling that it had a duty to defend the Ruffing claim. Liberty Mutual also appeals the district court's ruling that it was the primary insurer and Zurich the excess insurer.
 
 
 21
 For the reasons set forth below, we affirm the district court's judgment.
 
 DISCUSSION
 
 22
 We review a district court's grant of summary judgment de novo, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant. Bluestein & Sander v. Chicago Ins. Co., 276 F.3d 119, 121 (2d Cir.2002). Summary judgment is appropriate only if it can be established that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).
 
 
 23
 "The parties' briefs assume that New York law controls this dispute, and such implied consent ... is sufficient to establish choice of law." Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 296 (2d Cir.2000) (internal quotations omitted). Where New York law is unsettled, this Court is obligated to predict how the state's highest court would resolve the uncertainty. Id. at 297. "In making this prediction, we give the `fullest weight' to pronouncements of the state's highest court, while giving `proper regard' to relevant rulings of the state's lower courts." Id. (quoting Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994)).
 
 
 24
 Under New York Law, it is axiomatic that the duty to defend is "exceedingly broad" and more expansive than the duty to indemnify. Cont. Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993). "Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased." First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 165-166 (2d Cir.1998) (internal quotations and citations omitted). "An insurer must defend whenever the four corners of the complaint suggest — or the insurer has actual knowledge of facts establishing — a reasonable possibility of coverage." Cont. Cas. Co., 80 N.Y.2d at 648, 593 N.Y.S.2d 966, 609 N.E.2d 506.
 
 A. The Complaint Standing Alone
 
 25
 Liberty Mutual's policy covers any "consequential bodily injury to a ... child... of the injured employee ... provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by [IBM]." Liberty Mutual argues that "[t]he Ruffing Complaint, standing alone, is unambiguous, and does not allege any work-related injury to Zachary [Ruffing's] parents." Because the complaint alleges just parental exposure (and not injury) that resulted in Zachary's injury, Liberty Mutual contends it has no duty to defend.
 
 
 26
 Liberty Mutual's reading of the complaint is decidedly narrow. Faye Calton is listed as a plaintiff in the complaint, both individually and as the mother and guardian of Zachary Ruffing. Paragraph 34 of the Complaint states that "as a result of exposure to said chemicals, the Plaintiffs suffered ... [and] will continue to suffer, serious injury, illness and disease." Thus, Faye Calton — who is included among "the Plaintiffs" — expressly alleged an injury as a result of her exposure to the harmful chemicals.
 
 
 27
 Liberty Mutual dismisses this reading of the Complaint with the familiar, if casual, observation that reliance on paragraph 34 is "misplaced" because that paragraph refers "generally to all plaintiffs in the Ruffing Action." Liberty Mutual pegs its argument on paragraph 26 of the Complaint which states that "one or both of the parents of each plaintiff was exposed to said chemicals ... and each infant Plaintiff was thus exposed to and harmed by said chemicals prior to birth." Thus, Liberty Mutual argues, the general allegation in paragraph 34 cannot alter or modify what it would have us believe is the "unambiguous liability theory expressed in paragraph 26," where Zachary "expressly, and intentionally, avoided" alleging parental injury.
 
 
 28
 This argument is flawed. Paragraph 26 states that one or both of the parents of each infant Plaintiff was exposed to certain chemicals "and each infant Plaintiff was thus exposed to and harmed by said chemicals." Paragraph 34 states that Plaintiffs as a whole (which must include Calton) suffered serious bodily injury, illness and disease "[a]s a result of exposure to said chemicals." Thus, while in paragraph 26, parent plaintiffs allege only exposure, in paragraph 34, all plaintiffs (including parent plaintiffs) claim that exposure resulted in injury.
 
 
 29
 The complaint is, if anything, deliberately equivocal as to the precise relationship between Zachary's injury (as an infant plaintiff) and his mother's injury (as a co-plaintiff). The result is a corresponding ambiguity as to whether coverage exists. It is well settled that "[w]here there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer." Handelsman v. Sea Ins. Co. Ltd., 85 N.Y.2d 96, 101, 623 N.Y.2d 750, 647 N.E.2d 1258 (1994).
 
 
 30
 Doubtless, Liberty Mutual's interpretation of the complaint is informed by more than three years of intervening events between the filing of the complaint and Liberty's denial of coverage. These events (the filing of a Supplemental Bill of Particulars, the severance of the Ruffing claim and discovery in the Ruffing action) and the responses they engendered from Zachary's counsel and mother suggest that Zachary artfully avoided a flat allegation that his injury was the result of his parent's injury.[1] However, to inject these tactical considerations into our interpretation of the allegations in the four corners of the complaint is impermissible.
 
 
 31
 Looking at the complaint alone, and assuming arguendo that there is an inconsistency between paragraphs 26 and 34, the complaint is (at best for Liberty Mutual) ambiguous as to whether Zachary's mother alleges an injury that resulted in Zachary's injury. Thus, the complaint alleges at least the "reasonable possibility" or "potential" that at the conclusion of the Ruffing litigation it could be found that: (1) Zachary's parents were employed by IBM; (2) one or both of his parents suffered bodily injury as a result of workplace exposure to chemicals; and (3) Zachary suffered bodily injury as a result of his parents' injury. Accordingly, we conclude that Liberty Mutual had a duty to defend the Ruffing action.
 
 
 32
 Even were we to accept Liberty Mutual's reading of the complaint, the four corners of the complaint would still suggest a "reasonable possibility" of coverage. Cont. Cas. Co., 80 N.Y.2d at 648, 593 N.Y.S.2d 966, 609 N.E.2d 506. Liberty Mutual reads the complaint as devoid of any specific allegation that Zachary's injuries were caused by any injury to his parents. Instead, according to Liberty Mutual, the complaint alleged only parental exposure that resulted in injury to Zachary.
 
 
 33
 Liberty Mutual reminds us that we have held that, under New York law, "exposure" and "bodily injury" have separate meanings. See, e.g., Am. Home Prods. Corp. v. Liberty Mut. Ins. Co., 748 F.2d 760, 764 (2d Cir.1984). However, this distinction does not compel the conclusion "as a matter of law that there is no possible factual or legal basis on which [Liberty Mutual] might eventually be obligated to indemnify its insured under any policy provision." Allstate Ins. Co. v. Zuk, 78 N.Y.2d 41, 45, 571 N.Y.S.2d 429, 574 N.E.2d 1035 (1991). Exposure, while indeed not injury, is certainly an integral part of the injurious process;[2] and the parents of the infant plaintiffs do not affirmatively reject the possibility that their exposure also resulted in injury to themselves. Thus, even accepting Liberty Mutual's reading of the complaint, Liberty Mutual must defend because "liberally construed, the claim is within the embrace of the policy." Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 669-670, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981).
 
 B. Extrinsic Evidence
 
 34
 Liberty Mutual devotes a considerable part of its briefs to argue that extrinsic evidence supports its conclusion that it had no duty to defend. We are not confident that an insurer may consider extrinsic evidence under New York law. However, we find that — even if considered — the extrinsic evidence would not relieve Liberty Mutual of its duty to defend.
 
 
 35
 Liberty Mutual argues that Fitzpatrick v. American Honda Motor Co. countenances this collateral inquiry, where appropriate, rather than "mechanically applying only the `four corners of the complaint' rule." 78 N.Y.2d 61, 67, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991). It is not without significance, however, that Fitzpatrick endorsed the consideration of extrinsic evidence to establish that an insurer had a duty to defend because "wooden application of the `four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify — clearly an unacceptable result." Id. at 66, 571 N.Y.S.2d 672, 575 N.E.2d 90. Contrary to Liberty Mutual's suggestion, Fitzpatrick did not endorse the use of extrinsic evidence by an insurer to escape the duty to defend. Fitzpatrick is silent as to that issue.
 
 
 36
 Liberty Mutual rightly notes that some lower state court decisions support its view that "although an insurer's duty to defend is based upon allegations contained in the complaint extrinsic facts may be considered by the insurer." See, e.g., Pennsylvania Millers Mut. Ins. Co. v. Rigo, 256 A.D.2d 769, 681 N.Y.S.2d 414, 416 (3d Dep't 1998) (insured denied coverage because guilty plea to reckless endangerment vitiated any possibility that "injuries sustained by [civil plaintiff] were not `expected or intended' by [insured]"). However, there does not appear to be a consensus among New York's Appellate Divisions on this issue, as at least one department does not allow the use of extrinsic evidence by an insurer to deny coverage. See Petr-All Petroleum Corp. v. Fireman's Ins. Co., 188 A.D.2d 139, 593 N.Y.S.2d 693, 695 (4th Dep't 1993) ("On the other hand, the insurer cannot use extrinsic facts to show that there is no coverage.") Thus, there is no consistent rule from New York's lower courts and it is unclear whether New York law allows reference to extrinsic evidence in determining the duty to defend.
 
 
 37
 Additionally, it should be noted that all the extrinsic evidence Liberty Mutual seeks to use to deny coverage is information that became available while IBM was already defending the case.[3] We doubt that New York courts would reward Liberty Mutual by considering extrinsic evidence flushed out as a result of its unwillingness to take a position regarding the Ruffing claim for over three years.[4] To sanction this would undermine the "well established" principle "that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." Fitzpatrick, 78 N.Y.2d at 63, 571 N.Y.S.2d 672, 575 N.E.2d 90.
 
 
 38
 Our uncertainty whether to consider extrinsic evidence under New York law is ultimately immaterial, as none of the extrinsic evidence that Liberty Mutual points to conclusively negates coverage. Thus, even adopting Liberty Mutual's view of the law, the extrinsic evidence does not eliminate a "reasonable possibility" of coverage.
 
 
 39
 The extrinsic evidence offered by Liberty Mutual consists of documents from the underlying state tort action: (1) the Supplemental Bill of Particulars, (2) Faye Calton's sworn statement, (3) the proposed amended complaint, and (4) statements by counsel for the plaintiffs in the underlying action. We address each in turn.
 
 1. Supplemental Bill of Particulars
 
 40
 Liberty Mutual makes much of the fact that under "INJURED," the Bill of Particulars lists only "ZACHARY RUFFING." This merely reflects that the only tort claims for injury in the case were those of Zachary and that the parents themselves were not seeking damages for any bodily injury they suffered. Liberty Mutual then points to the line in the Bill of Particulars where the injury is listed as "Conception/Gestational." This language only undermines Liberty Mutual's argument, as the use of both words means that Zachary's claim was deliberately drafted to cover a myriad of potential results. Such a claim leaves open the "reasonable possibility" that a court could find that Zachary was harmed as a result of preconception or in utero injury that resulted in birth defects, thus bringing the claim within the coverage of the insurance policy.
 
 2. Faye Calton's Sworn Statement
 
 41
 In response to an interrogatory, Zachary's mother Faye stated that she "is not claiming any direct bodily injuries to herself at this time." Again, this only reaffirms that no actual tort claims based on injuries to Calton were being brought in the action; this does not foreclose the possibility that Zachary's injuries may be found to have resulted from some injury to Faye (and of course, this says nothing about Zachary's father).
 
 
 42
 Furthermore, Calton's response to the interrogatory continued: "However, she is not waiving any right that she may possess to file an action in the future on her own behalf, for any disease, injury or condition which may be diagnosed and become manifest in the future." Liberty Mutual correctly argues that the possibility of future claims itself would not create a duty to defend in this case. However, this language suggests that Calton's statement does not foreclose the possibility that the harm to Zachary could be found to have resulted from some injury to her — even though she was not yet advancing a tort claim based on such injury.
 
 3. Proposed Amended Complaint
 
 43
 In May 1997, the Ruffings attempted to amend the complaint in the state action. According to Liberty Mutual, the proposed amendment was disallowed by the trial court for "procedural reasons not relevant to this appeal." Liberty Mutual highlights language from the proposed amended complaint that states:
 
 
 44
 As a direct and proximate result of his parents MICHAEL RUFFING and FAYE CARLTON'S exposure to said chemicals, the infant plaintiff, ZACHARY RUFFING, suffered conception/gestational injury, and other illnesses and disease, together with grievous mental anguish and conscious pain and suffering. The parental exposure which led to this conception/gestational injury did not result in any concomitant reproductive injury to either parent of ZACHARY of which the parent is presently aware.
 
 
 45
 (emphasis added). The most obvious problem with Liberty Mutual's reliance on this proposed complaint is that the trial court rejected the complaint. Therefore, it does not alter any of our conclusions about what allegations were in play in the state proceedings.
 
 
 46
 Even if the amendment containing this language had been permitted, Zachary's parents do not affirmatively reject the possibility that their exposure also resulted in injury to themselves. The Liberty Mutual policy covers consequential damages to a child arising from an employee's bodily injury. The only type of injury Zachary's parents even plausibly reject here is a "concomitant reproductive injury." Zachary's parents do not exclude the possibility that they suffered other types of bodily injury. As such, there remains the reasonable possibility that it may eventually be found that Zachary was injured as a result of his parents' injury.
 
 4. Statements of Plaintiffs' Counsel
 
 47
 Liberty Mutual notes that, in opposition to IBM's motion to dismiss, Zachary's counsel stated in an affidavit that "the injury inflicted [on Zachary] was directly inflicted on the infant plaintiff and not on his parents." The affidavit also states that "as a factual matter it was the infant plaintiff and not his parents who suffered injury." Similarly, Liberty Mutual points to language in plaintiffs' memorandum in opposition to the motion to dismiss, identifying Zachary as "the sole, or first generation claimant, the sole injured individual in the Ruffing family," and stating that "both parents were exposed, and neither parent, so far as they are now aware, themselves sustained any bodily injury."
 
 
 48
 The broader context of plaintiffs' opposition to the motion, however, makes clear that plaintiffs were advancing some sort of preconception tort — even as plaintiffs attempted to maneuver around the inter — generational tort bar by disavowing direct claims of injury to the parents. Indeed, as Liberty Mutual's Chief Claims Examiner conceded at a deposition, the fact that the parents did not bring claims for personal injury did not "eliminate the potential that at the end of the Zachary Ruffing case it would be determined that Zachary Ruffing had been injured as a result of injury to his parents."
 
 
 49
 In sum, none of the extrinsic evidence that Liberty Mutual points to conclusively eliminates the reasonable possibility of coverage. We hold that Liberty Mutual had a duty to defend on the complaint standing alone and that the extrinsic evidence they offer in no way obviated that duty.
 
 C. The "Other Insurance" Clauses
 
 50
 Having decided that Liberty Mutual had a duty to defend the Ruffing claim, we turn finally to the issue of Zurich's liability.
 
 
 51
 Prior to initiation of this litigation, Zurich, as a GL Insurer, acknowledged a defense obligation with respect to the Ruffing claim. As explained above, we now hold that Liberty Mutual also had a duty to defend the Ruffing claim. Consequently, IBM is entitled to a defense coverage under two separate policies issued by Liberty Mutual and Zurich.
 
 
 52
 In such situations, the "other insurance" provisions in the several policies determine the insurers' respective obligations. State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 372, 492 N.Y.S.2d 534, 482 N.E.2d 13 (1985). Here, the clauses in Liberty Mutual's policies provide for pro rata sharing of covered obligations while the clauses in Zurich's policies are so-called "excess clauses," making the coverage provided excess to other valid insurance.
 
 
 53
 In this scenario — where an irresistable force meets an immovable object — the New York rule is that the insurer with the pro rata clause (Liberty Mutual) loses. It becomes the primary insurer and the insurer with the excess clause (Zurich) is indeed excess, not pro rata. Gen. Accident Fire & Life Assurance Corp. v. Piazza, 4 N.Y.2d 659, 669, 176 N.Y.S.2d 976, 152 N.E.2d 236 (1958). The excess insurer is required to provide coverage only when the primary insurance has been fully exhausted. Id. Thus, the district court's ruling that Zurich's liability is "to insure IBM in the Ruffing action only when and if Liberty Mutual's coverage has been exhausted," was correct.
 
 CONCLUSION
 
 54
 We have considered Liberty Mutual's other arguments and find them to be without merit. Therefore, the judgment of the district court is hereby AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The reason why Zachary's counsel might avoid a clear allegation that his injury was the result of his parent's injury is New York's inter-generational tort barEnright v. Eli Lilly & Co., 77 N.Y.2d 377, 389, 568 N.Y.S.2d 550, 570 N.E.2d 198 (1991) ("[A]n injury to a mother which results in injuries to a later-conceived child does not establish a cause of action in favor of the child against the original tort-feasor."). However, this potential bar to Zachary's recovery, and the strategy employed by his counsel to evade it, are not relevant to the initial determination of whether Liberty Mutual had a duty to defend based on the allegations of the complaint standing alone.
 
 
 [2]
 InAmerican Home Products, the underlying injuries at the heart of the dispute did not manifest themselves until after termination of insurance coverage. 748 F.2d at 762. Thus, the distinction between exposure and injury was absolutely crucial because each occurred during different and legally significant time periods. Here, given the unique circumstances of the case, plaintiffs' use of the word exposure does not preclude the reasonable possibility that the parents' exposure resulted in concurrent injury to the parents and ultimately in injury to infant plaintiffs as well.
 
 
 [3]
 In each of the cases Liberty Mutual cites where extrinsic evidence was used by an insurer to evade the duty to defend, the extrinsic evidence in question was available at the time the insurer was given the complaintSee Pennsylvania Millers, 681 N.Y.S.2d at 415; Gibbs v. CNA Ins. Cos., 693 N.Y.S.2d 720, 722 (3d Dep't 1999) (extrinsic evidence of insured's conviction for sexual abuse proved that "whatever injuries resulted were, as a matter of law, `intentionally caused' within the meaning of the policy exclusion"); Town of Moreau v. Orkin Exterminating Co., 165 A.D.2d 415, 568 N.Y.S.2d 466, 468 (3d Dep't 1991) (denying coverage because insured's criminal conviction precluded assertion that "burial of pesticides was unintentional").
 
 
 [4]
 We also note that examining this type of extrinsic evidence would give insurance companies a perverse incentive to delay making a decision whether to defend a suit, in the hopes that extrinsic evidence would emerge showing the claim fell outside the policy's coverage