Eric R. ADAMS, Plaintiff–Appellee,

v.

CHICAGO INSURANCE COMPANY, Defendant–Appellant,

Patricia E. Novak and Randolph P. Zickl, Defendants.

Docket No. 02–7179.

United States Court of Appeals, Second Circuit.

Oct. 23, 2002.

。 Kevin F. Cavaliere, Steinberg & Cavaliere, L.L.P. (Steven A. Coploff, on the brief) White Plains, N.Y., for Appellant.

Eugene Welch, Harris, Chesworth & O'Brien, Rochester, N.Y., for Appellee.

Present OAKES, STRAUB, Circuit Judges, and PRESKA, Judge.*

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED in part and VACATED and REMANDED in part for further proceedings.

* The Honorable Loretta A. Preska, Judge of the United States District Court for the Southern District of New York, sitting by designation.

Defendant–Appellant Chicago Insurance Company ("CIC") appeals from a January 28, 2002 judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge* ) requiring CIC to defend and indemnify Plaintiff–Appellee Eric Adams ("Adams") in a malpractice lawsuit filed against him. Adams, an attorney, purchased a professional liability insurance policy from CIC in 1997 (the "Policy"). Under the Policy, CIC was required to defend and indemnify Adams in connection with claims made against him. The Policy's "Assistance and Cooperation" clause provides:

> Upon the Insured becoming aware of any negligent act, error, omission or Personal Injury in the rendering of or failure to render Professional Services which could reasonably be expected to be the basis of a Claim covered hereby, written notice shall be given by the Insured ... to [CIC]...."

Adams brought this declaratory judgment action against CIC after it disclaimed coverage for a malpractice suit initiated against Adams; the disclaimer was made as a result of Adams' breach of the notice provision.

This dispute stems from a 1993 automobile accident in which Patricia Novak ("Novak") sustained personal injuries. Novak retained Adams to litigate her worker's compensation claim. In the course of that representation, Adams referred Novak to attorney Randolph Zickl ("Zickl") for the purpose of bringing a personal injury action against the other driver involved in the accident. Adams was to receive a one-third share of Zickl's fee in that action. The statute of limitations for Novak's personal injury action ended on September 24, 1996. No action was filed by either Zickl

or Adams by that date, and a later-filed action was eventually dismissed as time-barred.

On July 7, 1999, Novak's attorney in her malpractice action against Zickl, Lee Michaels ("Michaels"), contacted Adams and informed him that because Zickl did not carry malpractice insurance, Adams should be on notice of a potential lawsuit against him as a result of the missed statute of limitations. On July 20, 1999, Adams notified CIC's agent by letter of his conversation with Michaels. This was Adams' first notification to CIC about his potential exposure to liability in relation to Novak's personal injury case.

On July 28, 1999, Shereen Sennello ("Sennello"), a CIC claims attorney, wrote to Adams and requested additional information about Novak's claim. Sennello noted that Adams had been aware at least as of March or April 1997 that the statute of limitations had been missed, and she also stated:

> CIC reserves the right to disclaim coverage at a later date should we determine that you were aware at an earlier date of a negligent act, error or omission in the rendering of or failure to render professional services on behalf of the claimant which could reasonably be expected to be the basis of a claim and yet you reported this claim for the first time to CIC on July 20 1999. At this time, CIC is accepting you[r] notice of this claim under a full and complete reservation of its rights with respect to coverage. We will further review our coverage of this matter when the requested information has been provided and as this litigation progresses. Nothing contained herein should be considered to be a waiver of any term or condition of the policy issued to you by CIC, and CIC expressly reserves any and all of its

defenses under the terms, conditions, limitations, and/or exclusions thereof.

Not long after Michaels first contacted Adams, Michaels indicated that both he and Novak were reluctant to sue, and that Michaels would "make every effort, if your carrier gets in touch with us, to resolve this claim by settlement without the need to start a lawsuit." Over the next eight months, Sennello engaged in discussions with both Adams and Michaels aimed at reaching a possible settlement of Novak's claim. Although it is unclear how vigorously Sennello attempted to settle the claim, some efforts were made. For example, Sennello obtained Adams' authorization to offer $18,000 to Novak, and Sennello and Michaels discussed Zickl's culpabilty and the extent of Adams' coverage under the Policy. Michaels later testified in this action that "[i]f [CIC] had shown an interest in a negotiated settlement ... I would have worked with them to compromise and settle...."

After reporting Novak's claim to CIC, Adams noted in a letter to Sennello that by continuing to litigate Novak's worker's compensation claim, which included establishing the severity of her damages, he was potentially increasing his own exposure to liability. Adams requested Sennello's advice on his continued representation of Novak. Adams claims that Sennello instructed him to continue representing Novak in the worker's compensation suit, although CIC denies this.

On February 8, 2000, Michaels proposed by letter to Sennello that the parties stipulate to venue in state court in Adams' home county, and inquired whether CIC was interested in submitting some of the issues in the case to alternative dispute resolution ("ADR"), although Michaels indicated that he was not certain he would agree to that option. CIC did not respond

to those offers, nor did it inform Adams that they had been made.

On February 23, 2000, Michaels wrote to Adams and informed him that communications with CIC had "broken down" and he therefore had no choice but to serve Adams with a summons and complaint. On March 1, 2000, Novak filed suit against Adams and Zickl, seeking $500,000, twice the limit of Adams' policy limit per claim. On March 17, 2000, CIC informed Adams that it was disclaiming coverage for Novak's claim on the basis that Adams had breached the Assistance and Cooperation clause of the Policy by failing to inform CIC in a timely fashion of his exposure to suit based on the missed statute of limitations.

■ Adams thereafter brought this suit seeking a declaration that CIC is required to defend and indemnify him in the Novak action. The District Court held that Adams had unreasonably delayed in informing CIC of Novak's potential claim against him, and that he proffered no valid excuse for the delay. Adams does not contest that holding on appeal. The District Court also ruled that CIC was equitably estopped from disclaiming coverage because its eight-month delay in doing so was unreasonable. We agree that CIC's delay was unreasonable, but we remand because Adams' claim that he suffered actual prejudice from the delay raises a triable issue of fact.

■ Under New York law, "an insurer, who undertakes the defense of an insured,

may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir.2002). Here, there is no dispute that CIC had knowledge in July 1999 of a basis for disclaiming coverage on the ground that Adams failed to provide timely notice of the basis for a potential claim against him. Because CIC waited eight months before finally disclaiming coverage on that ground, CIC's delay was unreasonable as a matter of law. *See Bluestein*, 276 F.3d at 122 (nine-month delay); *U.S. Fidelity & Guaranty Co. v. Weiri*, 265 A.D.2d 321, 696 N.Y.S.2d 200, 201 (2d Dep't 1999) (six-month delay); *Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 612 N.Y.S.2d 441, 443 (2d Dep't 1994) (eight-month delay).

Even where an insurer unreasonably delays in disclaiming coverage, the insured must demonstrate prejudice from the delay in order to merit an estoppel. *See Weiri*, 696 N.Y.S.2d at 200. The District Court made no finding on the issue of prejudice.**

Whether or not an insured suffered prejudice is typically a question of fact. *See, e.g., Greater N.Y. Sav. Bank v. Travelers Ins. Co.*, 173 A.D.2d 521, 570 N.Y.S.2d 122, 123 (2d Dep't 1991). Prejudice to the insured can be presumed, however, "where an insurer, though in fact not obligated to provide coverage, *without as-*

---

** We note that N.Y. Ins. Law § 3420(d) does not apply to this action. Section 3420(d) imposes an obligation on an insurer to disclaim coverage within a reasonable time for claims involving "death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state." In the event that an insurer unreasonably delays under this provision, an insured need show no prejudice in order to prevent the insurer from disclaiming coverage. *See Allstate Ins. Co. v. Gross*, 27 N.Y.2d 263, 317 N.Y.S.2d 309, 313, 265 N.E.2d 736 (1970). By its plain terms, § 3420(d) does not apply to this action because the underlying claim is one for legal malpractice, not "death or bodily injury." *See, e.g., Sirignano v. Chicago Ins. Co.*, 192 F.Supp.2d 199, 206–07 (S.D.N.Y. 2002). As such, Adams must demonstrate prejudice.

*serting policy defenses or reserving the privilege to do so,* undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." *Bluestein,* 276 F.3d at 122 (citing *Albert J. Schiff Assocs. v. Flack,* 51 N.Y.2d 692, 699, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980)) (emphasis added); *see also Touchette Corp. v. Merchants Mut. Ins. Co.,* 76 A.D.2d 7, 429 N.Y.S.2d 952, 955 (4th Dep't 1980). Prejudice cannot be presumed on this record because CIC issued a reservation of rights upon first receiving notification of Novak's claim. *See O'Dowd v. Am. Surety Co.,* 3 N.Y.2d 347, 165 N.Y.S.2d 458, 463, 144 N.E.2d 359 (1957); *Mount Vernon Fire Ins. Co. v. Riccobono,* No. 98 Civ. 1213, 1999 WL 777863, at *3–5 (S.D.N.Y. Sept.30, 1999); *General Accident Ins. Co. v. 35 Jackson Ave. Corp.,* 258 A.D.2d 616, 685 N.Y.S.2d 774, 775–76 (2d Dep't 1999).

Adams can still prevail on his estoppel claim by demonstrating actual prejudice. In the proceedings below, Adams argued that CIC's eight-month delay in disclaiming coverage prejudiced him in the following ways: (1) because Adams was unaware of Michaels' proposal to consent to venue in Adams' home county, Adams was forced to expend time and money having the action transferred from Buffalo to Rochester after it was filed; (2) Adams also was forced to expend needless time and money litigating the issues that might have been forwarded to ADR had that possibility been pursued; (3) and CIC's failure to settle while "there was a residue of good will" between Adams, Michaels, and Novak compromised his ability to settle the action. CIC does not dispute that it failed to tell Adams of the venue and ADR proposals.

On appeal, Adams also argues that he was damaged by Sennello's advice that he continue representing Novak in her worker's compensation case. There is an issue of fact regarding whether Sennello issued such advice, as CIC denied that allegation below. Adams also argues that had CIC timely disclaimed, Novak might never have sued Adams. These issues raise questions of fact as to whether or not Adams suffered actual prejudice as a result of CIC's untimely disclaimer. Accordingly, the judgment of the District Court is hereby AFFIRMED with respect to its finding that CIC unreasonably delayed in denying coverage, and VACATED and REMANDED for further proceedings on Adams' claims of actual prejudice consistent with this order.